## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOREST COUNTY POTAWATOMI COMMUNITY, *a federally-recognized Indian Tribe,*<br>5416 Everybody's Road<br>Crandon, WI 54520;<br><br>        Plaintiff,<br><br>  vs.<br><br>THE UNITED STATES OF AMERICA,<br>950 Pennsylvania Avenue N.W.<br>Washington DC 20530-0001;<br><br>THE UNITED STATES DEPARTMENT OF THE INTERIOR,<br>1849 C Street, N.W.<br>Washington DC 20240;<br><br>SALLY JEWELL, *in her capacity as Secretary of the United States Department of the Interior,*<br>1849 C Street, N.W.<br>Washington DC 20240;<br><br>KEVIN WASHBURN, *in his capacity as Assistant Secretary – Indian Affairs, of the United States Department of the Interior,*<br>1849 C Street, N.W.<br>Washington DC 20240;<br><br>        Defendants. | CASE NO.<br><br>**COMPLAINT** |

Plaintiff Forest County Potawatomi Community (the "Community" or "Potawatomi"), a federally-recognized Indian Tribe, alleges the following:

## I.    INTRODUCTION

1.    The Community brings this action against the United States Department of the Interior ("DOI") and appropriate public officials (the DOI and the public officials being collectively referred to as the "Defendants") seeking redress for the DOI's

disapproval of the 2014 Amendment (the "2014 Compact Amendment"), attached as Exhibit A, to the Forest County Potawatomi Community of Wisconsin and State of Wisconsin Gaming Compact of 1992 (the " 1992 Compact").

2.      Under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq. ("IGRA"), Defendant Jewell is authorized to approve compacts for the regulation of Class III gaming entered into between a tribe and state. 25 U.S.C. § 2710(d)(8)(A). IGRA provides that the Secretary may only disapprove a Compact or Compact Amendment if it violates any provision of IGRA, any other provision of federal law unrelated to jurisdiction over gaming on Indian lands, or the trust obligations of the United States to Indians. 25 U.S.C. § 2710(d)(8)(B).

3.      Defendants disapproved the 2014 Compact Amendment in a January 9, 2015 letter from Kevin Washburn, Assistant Secretary – Indian Affairs to the Community (the "Disapproval Letter") on the grounds that it contained terms not included in the list of permissible provisions for compacts under IGRA. 25 U.S.C. § 2710(d)(3)(C), attached as Exhibit B.

4.      The Defendants' err by interpreting the 2014 Compact Amendment as obligating the Menominee Indian Tribe of Wisconsin (the "Menominee") to compensate Potawatomi for lost revenue resulting from a Menominee off-reservation casino in Kenosha, Wisconsin. It does not. Further, DOI improperly assumes that the purpose of the 2014 Compact Amendment is to impede the Menominee's efforts. It is not. Indeed, Menominee is only mentioned by name in the 2014 Compact Amendment because its application under 25 U.S.C. § 2719(b)(1)(A) triggered the amendment process set forth in Potawatomi's 2005 Compact Amendment. The 2014 Compact Amendment is

carefully crafted to create no contractual duty upon Menominee or any entity other than Potawatomi and the State of Wisconsin (the "State"), and to provide the State maximum flexibility in any future negotiations it may have with Menominee.

5.     Defendants' actions are cognizable under the APA, the Declaratory Judgment Act, and federal common law.

## II.     JURISDICTION AND VENUE

6.     The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1362.  This is a civil action brought by an Indian Tribe and arises under the Constitution, federal common law and federal statutes, including the APA.

7.     The Court has jurisdiction to adjudicate claims under 5 U.S.C. §§ 701 – 706.  The Community is suffering legal wrong, and is adversely affected and/or aggrieved by Defendants' action to disapprove the 2014 Compact Amendment.

8.     The Court has jurisdiction to adjudicate claims under 28 U.S.C. §§ 2201, 2202. This is an action that seeks declaratory and injunctive relief.

9.     Pursuant to 5 U.S.C. § 702, the United States has waived its sovereign immunity from this lawsuit, including claims against its political subdivisions and its officials.

10.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) and (e)(2) because this is an action in which the Defendants are officers and employees of the United States acting in their official capacities and a substantial part of the events or omissions giving rise to this claim has occurred within this judicial district.

## III.     PARTIES

11.     The Forest County Potawatomi Community is a federally-recognized

Indian Tribe.  The Community exercises jurisdiction and governmental authority over its membership and over its Indian lands, including land held in trust by the United States for the benefit of the Community, located in Forest, Milwaukee, Fond du Lac, Marinette, and Oconto Counties within the State of Wisconsin.

12.     Defendant United States of America is a sovereign entity that includes the U.S. Department of the Interior.

13.     Defendant Department of the Interior is statutorily charged with administration of the federal government's trust responsibility, generally, 25 U.S.C. §§ 2 and 9, and the approval of tribal/state compacts under the Indian Gaming Regulatory Act ("IGRA"), specifically. 25 U.S.C. § 2710(d)(3).

14.     Defendant Sally Jewell is Secretary of the DOI. She is sued in her official capacity.

15.     Defendant Kevin Washburn ("Washburn" or "Assistant Secretary") is Assistant Secretary – Indian Affairs of DOI. He presides over the Bureau of Indian Affairs (the "BIA") Central Office. He is sued in his official capacity.

## IV.     FACTUAL ALLEGATIONS

### A.     BACKGROUND

16.     The 2014 Compact Amendment is the product of a mandatory amendment process established in the 2005 Compact Amendment to the Forest County Potawatomi Community of Wisconsin and State of Wisconsin Gaming Compact of 1992 (the "2005 Compact Amendment"), which is considered to be approved by the Secretary by operation of law, hereafter described as "deemed approved," in January of 2006. The 2005 Amendment requires Potawatomi and the State to agree to financial terms that

would compensate Potawatomi for lost revenue, resulting from the Governor's concurrence in any tribe's application to take newly-acquired lands into trust for gaming purposes pursuant to a provision in IGRA that allows for such gaming, 25 U.S.C. § 2719(b)(1)(A), if such lands are within 30 to 50 miles from Potawatomi's existing gaming facility in Milwaukee, Wisconsin.

17.     Defendants disapproved the 2014 Compact Amendment on the grounds that it constitutes a violation of a provision of IGRA by including subjects that fall outside the list of permissible compact provisions under IGRA.  It does not. Indeed, IGRA expressly provides that a state and tribe may take into account the adverse economic impacts on existing gaming activities during compact negotiations. Moreover,  Defendants have routinely approved compacts or allowed compacts to go into effect that include financial terms regarding the impact of expanded or new gaming activities in a state including the State of Wisconsin.

18.     Menominee is seeking approval to operate a gaming facility in Kenosha Wisconsin (the "Kenosha Casino") pursuant to an IGRA process, 25 U.S.C. § 2719(b)(1)(A), which would allow such gaming if the Secretary of the Interior finds the proposal is in the best interest of the Menominee and not detrimental to the surrounding community, and the Governor of Wisconsin concurs in that determination. (this process is referred to herein as the "Menominee Application").  The Governor's concurrence is completely discretionary. The 2014 Compact Amendment does not impede the Governor from providing that concurrence and does not impede the Defendants from taking any further actions necessary to complete and implement the Menominee Application.

5

19.     Defendants acted contrary to law, in an arbitrary and capricious manner and abused their discretion, if any, in the disapproval of the 2014 Compact Amendment in violation of IGRA and the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq. ("APA").

20.     Defendants departed from long-established and consistent policies as reflected in previous decisions regarding the approval, disapproval and/or deemed approval of tribal-state gaming compacts, by disapproving the 2014 Compact Amendment, and thereby deprived Potawatomi of those rights and privileges afforded all other federally-recognized Indian Tribes, including but not limited to (1) providing the Community with the ability to negotiate, execute and enforce agreements with states for revenue sharing and market exclusivity in exchange for meaningful concessions of commensurate value, and (2) consulting with the Community during the Department's review of proposed compact amendments and allowing the Community an opportunity to cure an alleged defect prior to the expiration of the 45-day review period; and thereby improperly restricting the Governor's discretion to set any terms and conditions upon which he will concur in a two-part determination.

21.     Defendants deprived Potawatomi of the benefit of both the 2014 Compact Amendment and the 2005 Compact Amendment, and the benefit of prior Compact provisions that were approved or allowed to go into effect, thereby placing the terms of the 2005 Compact Amendment, upon which the Potawatomi relied, in jeopardy.

**B.      1992-2005: COMPACTS PRIOR TO THE 2005 AMENDMENT**

22.     Potawatomi occupied southeastern Wisconsin, including Milwaukee and Kenosha Counties before the area was settled by non-Indians.  Kenosha and Milwaukee

Counties were officially recognized by the United States as being Potawatomi Territory in the 1825 Treaty of Prairie du Chien (7 Stat. 272).  In 1833, the Potawatomi ceded the land that would eventually become Milwaukee and Kenosha to the United States in the Treaty of Chicago (7 Stat. 431).

23.   On June 10, 1987, before IGRA was enacted, Potawatomi submitted an application to the United States to acquire in trust for the benefit of Potawatomi two parcels of land known as the "Concordia College Land" and the "Menomonee Valley Land."  Both parcels are located in the City of Milwaukee.

24.   At the time of Potawatomi's trust application, the Indian Community School of Milwaukee, Inc. (the "Milwaukee Indian School") operated an Indian Elementary School on the Concordia College Land, which served Indian children from all of the Wisconsin tribes.   The Menomonee Valley Land was owned by the Redevelopment Authority of the City of Milwaukee.

25.   In its trust application, Potawatomi stated that it intended to operate a bingo hall on the Menomonee Valley Land.  Profits from the bingo hall would serve, in part, to fund the Milwaukee Indian School, which would remain on the Concordia College Land.

26.   The Concordia College Land and the Menomonee Valley Land were acquired in trust for Potawatomi on July 25, 1990 under the Indian Reorganization Act, and gaming was approved in a Two-Part Determination under IGRA, 25 U.S.C. § 2719(b)(1)(A). The Milwaukee Indian School remained on the Concordia College Land under a BIA-approved lease from 1990 to 2010.  During that time, Potawatomi funded the Milwaukee Indian School annually. At one point, the Potawatomi contribution to the

Milwaukee Indian School was up to $28 million dollars annually. From 1990 to 2010, Potawatomi provided over $350 million to the Milwaukee Indian School.

27.     Potawatomi opened a gaming facility on the Menomonee Valley Land within the City of Milwaukee on March 7, 1991. When Potawatomi Bingo Casino opened in 1991, the nearest Class III Indian gaming facilities were Ho-Chunk Gaming in Baraboo, Wisconsin and Oneida Casino in Green Bay, Wisconsin, both of which were more than 110 miles from Potawatomi Bingo Casino. The Ho-Chunk and Oneida facilities remain the closest Class III Indian gaming facilities to the Potawatomi Bingo Casino today.

28.     On June 3, 1992, the State and Potawatomi entered into the 1992 Compact that established the parameters for the Potawatomi's conduct of Class III casino gaming under IGRA.   Pursuant to IGRA, the parties were required to submit compacts and amendments to the DOI for approval; the Secretary of the Interior subsequently approved the 1992 Compact. 25 U.S.C. § 2710(d)(3).

29.     The 1992 Compact authorized 200 gaming devices and no blackjack games at Potawatomi Bingo Casino.  The 1992 Compact required Potawatomi to pay the State its proportional share annually of the State's $350,000 costs to regulate Indian gaming.   From 1992 to 1998, Potawatomi received thirty percent (30%) of the net income from Potawatomi Bingo Casino.   A casino management company and the Milwaukee Indian School received forty percent (40%) and thirty percent (30%) of the net income respectively.

30.     Every Indian Tribe with trust lands within the State had a DOI-approved gaming compact from 1992 to 1998. Only Potawatomi's 1992 Compact, however,

included a limit of 200 gaming devices, while the other compacts contained no limitations on the numbers of gaming devices at each tribe's primary facility, and only Potawatomi was required to dedicate gaming revenue to the Milwaukee Indian School, which served children from all Wisconsin Tribes.

31.     In December 1998, the State and Potawatomi amended various aspects of the 1992 Compact and the Secretary of Interior approved the 1998 Compact Amendment.  The 1998 Compact Amendment allowed Potawatomi to operate 1,000 gaming devices and 25 blackjack tables if the City and County of Milwaukee adopted resolutions approving expanded gaming. Compacts amended in 1998 with other Wisconsin Tribes, however, continued to contain no limitations on the numbers of gaming devices or blackjack tables at each tribe's primary facility. The 1998 Compact Amendment increased Potawatomi's annual payment to the State to $6,375,000 and extended the term of the Compact for an additional five years.  A subsequent City and County Intergovernmental Agreement required Potawatomi to pay the City and County governments a combined total of three percent (3%) of the modified net win. Potawatomi also committed to annual charitable contributions. The 1992 Compact was set to expire, if not renewed, on June 3, 2004.

32.     Beginning in 2002, the Tribes with Indian lands in Wisconsin and the State again negotiated amendments to their compacts.  The Potawatomi and the State agreed to terms on or about February 19, 2003 (the "2003 Compact Amendment").  The 2003 Compact Amendment removed the limits on the number of gaming devices, and allowed new types of casino games, including electronic keno, roulette, craps, poker, and similar non-house banked card games, and games played at blackjack-style tables.

The 2003 Compact Amendment also removed previous limits on wagers and hours of operation and included a waiver of the sovereign immunity of the State of Wisconsin. In addition, the Compact duration, which formerly provided for five-year extensions, was made perpetual.

33.    As part of the 2003 Compact Amendment, Potawatomi agreed to make lump sum payments to the State totaling $90.5 million over a two-year period to help alleviate a State budget crisis.  Potawatomi further agreed to pay increased annual payments to the State based on a percentage of its Menomonee Valley Class III "net win". In contrast to net profit, "net win" does not take into account gaming-related operating expenses, which typically exceed fifty percent (50%) of net win.   The increased annual payments to the State were in the amounts of seven percent (7%) of net win per annum for the period of July 1, 2005 to June 30, 2006; eight percent (8%) of net win per annum for the period of July 1, 2006 to June 30, 2008; seven percent (7%) of net win per annum for the period of July 1, 2008 to June 30, 2009; six percent (6%) of net win per annum for the period of July 1, 2009 to June 30, 2011; and six and one-half percent (6.5%) of net win per annum thereafter.

34.    The obligation to make the lump sum payments pursuant to Compact Section XXXI.G.1. required Potawatomi to utilize credit instruments to obtain funds for the payments.  In addition, the ability to preserve the revenue stream anticipated by Potawatomi at the time it agreed to the payments was a material consideration in its agreement to make the payments.

35.    As part of the 2003 Compact Amendment, and in consideration for Potawatomi's increased annual lump sum payments to the State, the State and

Potawatomi agreed to a 50-mile non-competition, or "no-fly", zone around Milwaukee. The applicable 2003 Compact Amendment language, contained in former Section XXXI.B.3, stated that "If the State enters into or authorizes an agreement permitting Class III gaming under the Act within 50 miles of the Potawatomi Bingo and Casino on the Menomonee Valley Land, then . . . the Tribe shall thereafter be relieved of its obligation to pay the amounts required in this Section XXXI, and the State shall refund to the Tribe the amount paid to the State by the Tribe under Section XXXI.G.1.b. of the Compact."

36.     The 2003 Compact Amendment was submitted to the Secretary of the Interior on February 20, 2003. The Secretary had until April 6, 2003 to approve or disapprove the 2003 Compact Amendment.  On or about April 4, 2003, Potawatomi and the State were informed by then Acting Assistant Secretary - Indian Affairs Martin and others that the Secretary would not approve the 2003 Compact Amendment with the "no-fly zone" provision. Acting Assistant Secretary Martin subsequently approved compacts for other tribes with similar provisions.

37.     Following the Secretary's statements, the parties discussed options. Eventually, the parties agreed to submit a compact amendment to the Secretary on April 4, 2003, which removed the 50-mile "no-fly zone" provision from the February 2003 Compact Amendment, and to negotiate a substitute provision which would provide a similar benefit to Potawatomi.

38.     The Secretary subsequently allowed the February 2003 Compact Amendment to go into effect as "deemed approved."

39.     In May of 2003, the State and Potawatomi amended various technical

aspects of the Compact and the Secretary subsequently allowed the amended Compact to go into effect as "deemed approved."

40.    The 2003 Compact Amendment, together with similar compacts between the State and other Wisconsin Tribes, led to litigation captioned *Panzer v. Doyle*, 271 Wis. 2d 295, 680 N.W.2d 666 (2004)("*Panzer*").  In *Panzer*, the State Senate Majority Leader, the State Assembly Speaker, and the Joint Committee on Legislative Organization challenged then-Governor Doyle's authority to enter into the 2003 Compact Amendment, asserting that the Governor improperly agreed to amendments that (1) expanded the scope of gaming by adding games that were previously not permitted for any purpose by any person, organization or entity in Wisconsin; (2) extended the duration of the Compact indefinitely so that it became perpetual; (3) committed the State to future appropriations; and (4) waived the State's sovereign immunity.

41.    The Wisconsin Supreme Court issued its opinion in the case on May 13, 2004.  Although the Wisconsin Supreme Court held that the state statute which allowed the Governor to enter into gaming compacts with tribes was not an unconstitutional delegation of power, the Court also held that the Governor lacked the inherent authority necessary to enter into certain of the amendments at issue in the case.  Specifically, the Court found that the Governor did not have the authority to (1) commit the State to a perpetual compact term; (2) expand the types of Class III gaming permissible under the Compact; or (3) waive the State's sovereign immunity.   The Court found any amendment provision to that effect void.  *Id*. ¶ 110. The 2003 Compact Amendment provided that if the "Duration Provision was found unenforceable or invalid by a court

of competent jurisdiction," then "the State shall immediately refund any payments made by the Tribe to the State under Section XXXI.G.1.b. [$40.5 million on June 30, 2004 and $43.625 million due on June 30, 2005]; the Tribe shall not be required to make further payments to the State under section XXXI.G.2; and the Parties shall negotiate in good faith to reach agreement on substitute provisions for sections XXV and XXXI." (2003 Compact Amendment Section XXXIII.A).

42.     Because the *Panzer* decision invalidated the Duration Provision, Compact Section XXXIII.A provided that Potawatomi was not required to make either the June 30, 2004 or the June 30, 2005 payment to the State, and the State was required to negotiate in good faith on substitute compact provisions.  However, in reliance on the pledge of then-Governor Doyle to negotiate additional amendments to its Compact, Potawatomi paid the $40.5 million lump sum payment to the State on June 30, 2004.

## C.     THE 2005 POTAWATOMI COMPACT AMENDMENT AND ITS PROVISION MANDATING "LAST BEST OFFER" ARBITRATION

43.     After the *Panzer* decision, the parties negotiated for nearly a year and a half in an attempt to reach an agreement on substitute provisions for the sections of the 2003 Compact Amendment that had been voided.   The parties also attempted to negotiate the terms for a replacement for the 50-mile "no-fly zone" provision.

44.     On July 6, 2004, the Menominee filed an application to take land into trust in Kenosha, Wisconsin under IGRA, 25 U.S.C. § 2719(b)(1)(A). The proposed Kenosha casino is approximately thirty-three (33) miles from the Potawatomi gaming facility in Milwaukee.

45.     The 2005 Compact Amendment was submitted to the Secretary in October 2005 and, like the 2003 Compact Amendment, the Secretary allowed the 2005 Compact

Amendment to go into effect as "deemed approved." Menominee submitted a letter to DOI opposing the 2005 Compact Amendment as violating IGRA. Menominee took no legal action to challenge the 2005 Compact Amendment.

46.     In reliance on the publication in the Federal Register of the 2005 Compact Amendment and the good faith pledge of the State, Potawatomi made the $43.625 million payment to the State in accordance with Compact § XXX.I.G.1.a, and continued to make annual payments to the State through the summer of 2013.  Relying on the 2003 and 2005 Compact Amendments, Potawatomi invested the funds needed to increase the size of Potawatomi Bingo Casino to 780,000 square feet.

47.     In 2006, in *Dairyland Greyhound Park, Inc. v. Doyle*, 295 Wis. 2d 1; 719 N.W.2d 408 (2006), the Wisconsin Supreme Court held that, contrary to *Panzer's* holding, because the original compacts contemplated extending and amending the scope of Indian gaming, the parties' right of renewal was constitutionally protected by the Contract Clauses of the United States and Wisconsin Constitutions; and amendments to the original compacts that expanded the scope of gaming were likewise constitutionally protected by the Contract Clauses of both Constitutions.

48.     On August 23, 2013, the Assistant Secretary determined that the Menominee proposed Kenosha casino was in the best interest of Menominee and its members, and would not be detrimental to the surrounding community (the "Secretary's Determination"), triggering a one-year period for the Governor's concurrence. In the Secretary's Determination, the Assistant Secretary said, " As to this application, it has been our responsibility to determine whether a tribal casino on the outskirts of Chicago land is in the best interest of the Menominee tribe. As the following analysis

demonstrates, our decision is driven in part by our commitment to creating jobs. We believe that such a casino would create gaming jobs in Kenosha and tribal public service jobs in Northeastern Wisconsin on the Menominee reservation, much of them created by revenues brought to Wisconsin from Illinois." The Assistant Secretary granted Governor Scott Walker a six-month extension until February 19, 2015, to decide whether to concur in the Secretary's Determination.

49.     Federal law does not impose any restrictions on the Governor in his/her decision whether to concur in the Secretary's Determination. The Governor may decline to concur for any reason, or no reason at all. Accordingly, federal law enables to Governor to impose any pre-condition he/she determines appropriate, which is otherwise not prohibited by federal law, regarding his concurrence.

50.     On June 23 2014, the State invoked the last best offer arbitration procedure provided by Section XXII.A.11 of the 2005 Compact Amendment:

> Last Best Offer of Substitute Compact Amendment. The parties shall each submit to last best offer arbitration a proposed Compact amendment which includes, without modification, the payments provisions of Section XXXI.G., as amended by this 2005 Amendment, but which also specifies the rights, duties and obligations of the Parties in the event the State concurs in a favorable determination of the Secretary of the Interior pursuant to section 20 of the Act, 25 U.S.C 2719 (b)(1)(A), regarding a proposed gaming establishment on lands located within 50 miles of the Tribe's Class III gaming facility in Milwaukee. The Tribe's last best offer may provide for a reduction in, or refund of, the payments to the State agreed to in section XXXI.G. of the Compact in the event the State concurs in a favorable determination of the Secretary of the Interior pursuant to section 20 of the Act, 25 U.S.C 2719 (b)(1)(A), regarding a proposed gaming establishment located within 50 miles of the Tribe's Class III gaming facility in Milwaukee. The State's last best offer will propose a procedure(s) to establish an agreement between, at a minimum, the Tribe and the tribe making application pursuant to section 20 of the Act to have land located within 50 miles of the Tribe's Class III gaming facility in Milwaukee taken into trust for gaming purposes, pursuant to which the Tribe will be compensated for revenues lost due to the operation of the Class III gaming facility located within 50 miles of the Tribe's Class III gaming facility in Milwaukee, and which may not be

inconsistent with, but may propose additional terms relative to, section XXXI.I. If the arbitrator determines that an offer does not comply with the requirements contained in this paragraph 11, the arbitrator shall select the offer of the other party if the arbitrator determines it does so comply. In the event the arbitrator determines neither offer so complies, the arbitrator shall reject both offers and shall require the parties to submit new last best offers.

51.     After a four-month process of briefing, exchanging confidential and proprietary information, and expert testimony and hearing, the three-person arbitration panel comprised of an attorney selected by Potawatomi, an attorney selected by the State, and a mutually agreed-upon retired federal judge of the United States District Court, unanimously selected the 2014 Compact Amendment.

52.     The compact amendment selected by the arbitration panel, the 2014 Compact Amendment, was the logical result of the history of compact negotiations and reliance by the State and Potawatomi on the 2003 and 2005 Compact Amendments. The 2014 Compact Amendment, if in effect, will protect the revenue stream, which Potawatomi relied upon when it agreed to make the large payments to the State.

53.     On November 26, 2014, the State and Potawatomi submitted the 2014 Compact Amendment, together with the information and certifications required by 25 C.F.R. Part 293, to DOI for approval.  That submission triggered a 45-day period within which DOI was required to make a decision to approve or disapprove the 2014 Compact Amendment. If no action was taken within the 45-day period, the 2014 Compact Amendment would have been "deemed approved."

54.     The 2014 Compact Amendment implements the intent of the 2005 Compact Amendment by protecting the Potawatomi gaming revenue stream which was the critical consideration for Potawatomi's agreement to make the large lump sum payments and increased annual revenue sharing payments to the State.  The 2014

16

Compact Amendment implements the State's agreement to provide reasonable protection for Potawatomi's core market area.  Potawatomi has relied on the State's agreement over the past 10 years during which it has paid the State $234.3 million. The Potawatomi Compact calls for the annual payments to the State to continue until 2031.

55.    The State received what it bargained for from Potawatomi in the 2003 Compact Amendment: advance payments to help close a $3.2 billion deficit and increased annual payments through a percentage of win, rather than f i x e d  set payments. By contrast, Potawatomi has not received what it bargained for: a perpetual compact,  the State's waiver of sovereign immunity, and the 50-mile non-competition zone.  The 2014 Compact Amendment is the vehicle by which Potawatomi is to receive at least part of the benefit of its 2003 bargain with the State.

56.    The 2014 Compact Amendment requires payment by the State of an annual Mitigation Payment to Potawatomi equal to the Annual Revenue Loss, if the Governor concurs in the Secretary's Determination. Amendment Section XXXVII.C.  The Mitigation Payment is equal to the Annual Revenue Loss, which "means the reduction over a Fiscal Year in Milwaukee Net Revenues caused by an Applicant Facility". Amendment Section XXXVII.D.1. Milwaukee Net Revenues "means (a) revenue from Class III gaming, Class II gaming, food and beverage, hotel and entertainment activity earned at the Milwaukee Facility." Amendment, Section XXXVII.D.2. Annual Revenue Loss is carefully defined to only include loss that is a direct result of the Applicant Facility. Thus, Potawatomi will not be compensated for any effects of expanded Illinois competition (much of the anticipated loss of Potawatomi revenue is the result of the Applicant facility being located 33 miles closer to the Illinois market) or any factor other than the Applicant Facility.

17

57.     The 2014 Compact Amendment obligates only the State to make the required Mitigation Payments to Potawatomi. The 2014 Compact Amendment allows the State to fulfill its obligations in whole or in part by reaching agreements in the form of compact amendments or other types of agreements or arrangements with another Indian Tribe and/or other entities not parties to the 2014 Compact Amendment. The 2014 Compact Amendment allows the Governor to make whatever policy choices he wants to make regarding the Kenosha casino and Menominee.  If the Governor believes that a casino will benefit Kenosha, he is free to concur.  However, in exercising that discretion, the State cannot renege on its promise to Potawatomi for which it has paid the State over $243 million.  The fact that the State may choose to shift its financial burden to Menominee does not affect the validity of the promise it made to Potawatomi.

58.     The mandatory amendment provision of the 2005 Compact Amendment, Section XXII.A.11 is triggered by any Tribe making an application to have land taken into trust for gaming purposes pursuant to 25 U.S.C. § 2719(b)(1)(A) within thirty to fifty miles of Potawatomi's Milwaukee gaming facility. The 2014 Compact Amendment makes two references to Menominee.  First, Section XXXVII.A acknowledges that Menominee is an Applicant Tribe in the context of 2005 Compact Amendment Section XXII.A.11 due to its July 6, 2004 application. Second, Section XXXVII. F refers to a "lock box" provision in the current Menominee Compact as one of several options the Governor may choose to pursue in his unbridled discretion, under IGRA, to impose conditions on his concurrence with the Secretary's Determination. The 2014 Compact Amendment requires Potawatomi to consider such a provision in good faith if the Governor were to make such a request of Potawatomi (which he has not), and nothing more.  Nor does the provision of the 2014 Compact

Amendment bind or obligate Menominee in any manner. The Disapproval Letter asserts that the "decision might be different" if the 2014 Compact Amendment had simply referred to "applicant", rather than Menominee. DOI's statement is a non-sequitur. In addition, the Disapproval Letter frequently misquotes the text of the 2014 Compact Amendment by referencing "Menominee," when the text of the amendment is "applicant". The 2005 Compact Amendment only mentions the "applicant." Menominee's July 6, 2004 application make's it an "applicant" within that context. The two references to "Menominee" in the 2014 Compact Amendment are limited to such acknowledgement.

59.     The 2014 Compact Amendment does not restrict the Governor of the State from concurring with the Secretary's Determination, or limit the State's ability to negotiate terms for a compact amendment with any other tribe. Indeed, the State is free to negotiate a compact amendment with an applicant tribe that contains no provisions whatsoever for payment by the Tribe to the State or its designee.  Accordingly, the 2014 Compact Amendment leaves the terms under which the Governor may decide to either concur or not concur in the Secretary's Determination entirely open to negotiation between the Menominee and the State.  The 2014 Compact Amendment does not interfere with the State-Menominee relationship.  Any compact amendment between Menominee and the State is left to negotiation between the State and Menominee.

60.     At no time during the 45-day review period did the Defendants advise the Community that the 2014 Compact Amendment was likely to be disapproved as, for example, the Assistant Secretary did when considering the 2003 Compact Amendment. Potawatomi, through its Chairman and numerous officials and representatives, repeatedly inquired and offered assistance, information or documentation to facilitate

the review, including a meeting with Defendant Washburn and various officials on December 31, 2014. In contrast, Defendants' policy and practice has been to inform tribes of concerns that would otherwise result in disapproval and provide an opportunity to cure prior to the expiration of the 45-day review period.

61.     During the meeting of December 31, 2014, Potawatomi offered to take steps necessary to make available to DOI, the briefing and materials, including the State's last best offer submitted, and materials submitted by Menominee to the State in the context of the arbitration process set forth in the 2005 Compact Amendment. The Defendants, aware of the materiality of such information, declined Potawatomi's offer.

**D.     THE   JANUARY 9, 2015 DISAPPROVAL OF THE 2014 COMPACT AMENDMENT**

62.     On January 9, 2015, Defendants informed Potawatomi that they had disapproved the 2014 Compact Amendment in the nine-page Disapproval Letter setting forth the reasons for their decision.

63.     The Disapproval Letter relies on factual errors, including the erroneous assertion that the 2014 Compact Amendment requires that Menominee be responsible for the State's financial obligations to Potawatomi. Specifically, the Disapproval Letter incorrectly asserts that Menominee "will bear the burden of making Potawatomi whole"; that Potawatomi "seeks to guarantee its profits by shifting the costs of any impact to the Menominee"; that "Potawatomi have attempted to shift to the Menominee the significant financial burden of preserving all of the Potawatomi monopoly profits"; that "We note that the Potawatomi' s proposed compact amendment goes further than simply obtaining financial guarantees from the State. It seeks to impose a substantial financial burden on the Menominee community"; and that "it is clear that the 2014

Amendment intends to make Menominee responsible for any Mitigation Payments due, which would continue for the life of the Potawatomi's Compact." All of these factual statements and conclusions in the Disapproval Letter are false. The 2014 Compact Amendment imposes no obligation on Menominee, nor does it compel the State to impose any obligation on Menominee.

64. The Disapproval Letter relies on additional factual statements which are wrong or irrelevant, including:

65. the assertion that the 2014 Compact Amendment attempts "to guarantee the continued profitability of one tribe's casino at the expense of another tribe;"

66. the assertion that "[a]lthough the 2014 Amendment purports to make the State ultimately responsible for collecting the Mitigation Payments, the plain language of the 2014 Amendment and the supporting documents from the Potawatomi and the State demonstrate that, in fact, Menominee would be responsible for making all of the Mitigation Payments intended to protect the Potawatomi's revenue;"

67. the assertion that the "Mitigation Payments envisioned by the 2014 Amendment go well beyond a potential reduction in the Potawatomi's revenue sharing payments that we have permitted in other instances." Indeed, in the very same paragraph in which Defendants make this statement, Defendants acknowledge that they have approved compacts that allow for "indemnification" by a State to a Tribe in an exclusivity provision;

68. the assertion that the 2014 Compact Amendment regulates Class II gaming;

69. the assertion that the proposed impact of the Menominee/Kenosha

proposal will only have a "modest, short-term" impact on Potawatomi; and

70.     the assertion that disapproval of "this compact ensures a continued level playing field among all tribal gaming market entrants."

71.     The Disapproval Letter's conclusion that the provisions of the 2014 Compact Amendment fall outside the list of permissible compact provisions under IGRA is inconsistent with DOI practice. Defendants have routinely approved compacts or allowed compacts to go into effect that include similar financial terms regarding the impact of expanded or new gaming activities in a state. The 2014 Compact Amendment compensates Potawatomi for the consideration it has paid for exclusivity in prior Compact Amendments. Indeed, IGRA expressly provides that a compact may include provisions that take into account the adverse economic impacts on existing gaming activities. 25 U.S.C. §§ 2710(d)(7)(A)(iii)(I) and 2710(d)(3)(C)(vii).

72.     The Disapproval Letter concedes DOI has approved or allowed to go into effect as deemed approved, compacts and/or compact amendments that provide for a change in financial terms regarding payments between a state and a tribe based on an expansion of gaming in the State.

73.     The Disapproval Letter relies on references to an alleged policy and/or practice of disapproving compacts that have even an inconsequential tangential impact on Class II gaming. The 2014 Compact Amendment does not have any impact on Class II gaming; it only includes Potawatomi's Class II and non-gaming revenue in the calculation of the Mitigation Payment.

74.     The Disapproval Letter relies on legal errors, including the false assertion "that the 2014 Amendment violates IGRA because it includes provisions involving

22

subjects that exceed the permissible scope of a Class III gaming compact." Although the subject of 2014 Compact Amendment is within the permissible scope of subjects, 25 U.S.C. §§ 2710(d)(7)(A)(iii)(I) and 2710(d)(3)(C)(vii), the actual policy and practice of DOI is to approve compacts or allow compacts to go into effect that include subjects outside IGRA's permissible compact provisions.

75.     The Disapproval Letter relies on an erroneous statement that is a mixed statement of fact and law: "The Potawatomi argues that it relied on our deemed approval of the 2005 Amendment. However, the terms of the 2005 Amendment are distinguishable--- the 2005 Amendment provided for a dispute resolution process in the event of a positive two-part determination and did not contemplate a financial burden being imposed on Menominee."   To the contrary, the 2005 Amendment expressly provides: "The State's last best offer will propose a procedure(s) to establish an agreement between, at a minimum, the Tribe and the tribe making application pursuant to Section 20 of the Act to have land located within 50 miles of the Tribe's Class III gaming facility in Milwaukee taken into trust for gaming purposes, **pursuant to which the Tribe will be compensated for revenues lost due to the operation of the Class III gaming facility located within 50 miles of the Tribe's Class III gaming facility in Milwaukee**...Section XII (A)(11) (emphasis added).

**FIRST CLAIM FOR RELIEF**
**ADMINISTRATIVE PROCEDURES ACT**

76.     Potawatomi incorporates by reference paragraphs 1 through 75 as if set forth fully herein.

77.     Under IGRA, the Secretary may only disapprove a compact if the compact violates a provision of IGRA, violates an other provision of federal law not related to

jurisdiction over gaming, or violates the United States trust obligation to Indians. 25 U.S.C. § 2710(d) (8)(B).

78.     Under the APA, the Court may hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706 (2)(a).

79.     The January 9, 2015 Disapproval Letter constitutes a final agency action reviewable pursuant to the Administrative Procedures Act. 5 U.S.C. §§ 702 and 706.

80.     Defendants' January 9, 2015 disapproval of the 2014 Compact Amendment was contrary to law, arbitrary and capricious, and an abuse of discretion, if any such discretion was present.

81.     Potawatomi is entitled to an Order vacating the January 9, 2015 disapproval, which Order will result in the 2014 Compact Amendment going into effect as "deemed approved" under IGRA.

## SECOND CLAIM FOR RELIEF:
## ADMINISTRATIVE PROCEDURES ACT

82.     Potawatomi incorporates by reference paragraphs 1 through 81 as if set forth fully herein.

83.     Upon Defendants' action allowing the 2005 Compact Amendment between Potawatomi and the State to go into effect, Defendants have a minsterial duty to approve the 2014 Compact Amendment selected by the Arbitration Panel per the terms of the 2005 Compact Amendment.

84.     Any discretionary basis on which DOI may ordinarily disapprove a compact or compact amendment is not available to DOI in its review of the 2014 Compact Amendment. The action in this context is a minsterial action, as opposed to a

discretionary action.

85.     Potawatomi is entitled to an Order vacating the January 9, 2015 disapproval, which Order will result in the 2014 Compact Amendment going into effect as "deemed approved" under IGRA.

### THIRD CLAIM FOR RELIEF:
### DECLARATORY JUDGMENT ACT

86.     Potawatomi incorporates by reference paragraphs 1 through 85 as if set forth fully herein.

87.     The case and controversy between Potawatomi and Defendants is ripe and justiciable and, pled in the alternative, is not otherwise postured to provide Potawatomi an adequate remedy such that Potawatomi is entitled to declaratory relief under 28 U.S.C. §§ 2201-02.

88.     Potawatomi is entitled to an Order declaring the January 9, 2015 disapproval of the 2014 Compact Amendment is vacated and of no legal effect, which declaration will result in the 2014 Compact Amendment going into effect as "deemed approved"    under IGRA.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

A.     Pursuant to 5 U.S.C. § 706, an Order holding unlawful and setting aside the January 9, 2015 final agency action disapproving the 2014 Compact Amendment.

B.     Pursuant to 5 U.S.C. § 706, an Order compelling Defendants to approve the 2014 Compact Amendment or to cause such 2014 Compact Amendment to take effect as "deemed approved" under IGRA.

C.     Pursuant to 5. U.S.C. § 705, to postpone the effective date of the January 9, 2015

disapproval of the 2014 Compact Amendment pending review by this Court.

      D.      Pursuant to 28 U.S.C. § 2201, a declaration that the January 9, 2015 agency action disapproving the 2014 Compact Amendment is vacated and of no legal effect.

      E.      Pursuant to 28 U.S.C. § 2202, an Order that Defendants shall take those actions necessary for the 2014 Compact Amendment to take effect as a matter of federal law.

      F.      An Order directing Defendants Jewell and Washburn, in their official capacities, to take those actions necessary for the 2014 Compact Amendment to take effect as a matter of federal law.

      G.      Any further relief to which the Potawatomi may ultimately be entitled or which the Court may deem appropriate after full development of the facts and consideration of all relevant interests.

Dated: January 21, 2015                      Respectfully Submitted,

s/ David Bernhardt
DAVID BERNHARDT
(DCB #991472/ DC Court #24475)
Ryan A. Smith (DCB/DC Court #985586)
Brownstein Hyatt Farber Schreck, LLP
1350 I Street, N.W., Suite 510
Washington, DC 20005-3305
Phone: 202-296-7353
Fax:   202-296-7009
Email: dbernhardt@bhfs.com
       rsmith@bhfs.com

SCOTT D. CROWELL (*pro hac vice application pending*)
CROWELL LAW OFFICE - TRIBAL ADVOCACY GROUP
1487 W. State Route 89A, Suite 8
Sedona, Arizona 86336
Telephone:   (425) 802-5369
Facsimile:   (509) 290-6953
scottcrowell@hotmail.com

Attorneys for Plaintiff

OF COUNSEL

Jeffrey A. Crawford,
Attorney General
FOREST COUNTY POTAWATOMI
COMMUNITY LEGAL DEPARTMENT
313 North 13th Street
Milwaukee, WI,  53233
Telephone: (414) 847-7750
Facsimile (414) 847-7721
Jeffrey.Crawford@fcpotawatomi-nsn.gov