UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOREST COUNTY POTAWATOMI COMMUNITY,<br><br>        *Plaintiff*,<br><br>        v.<br><br>UNITED STATES, *et al.*,<br><br>        *Defendants*,<br><br>MENOMINEE INDIAN TRIBE OF WISCONSIN and MENOMINEE KENOSHA GAMING AUTHORITY,<br><br>        *Defendant-Intervenors*. | Civil Action No. 15-105 (CKK) |

MEMORANDUM OPINION
(April 14, 2016)

Plaintiff Forest County Potawatomi Community ("Potawatomi") brought this action

under the APA against Defendants United States of America, United States Department of the

Interior, Secretary of the Interior Sally Jewell, and Assistant Secretary of Indian Affairs Kevin

Washburn (collectively, the "Federal Defendants"), challenging the Federal Defendants' decision

to disapprove an amendment to a gaming compact between FCPC and the State of Wisconsin

under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et. seq,* ("IGRA").

Presently before the Court is the [22] Motion for Leave to Intervene filed by the

Menominee Indian Tribe of Wisconsin and the Menominee Kenosha Gaming Authority

(collectively, the "Menominee" or the "Putative Intervenors"), which is opposed by Plaintiff.[1]

_____

[1] The Federal Defendants do not oppose the Putative Intervenors' Motion to Intervene.

Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole,

the Court finds that the Putative Intervenors are entitled to intervene as a matter of right under

Federal Rule of Civil Procedure 24(a).  Accordingly, the Court shall GRANT their Motion for

Leave to Intervene.

## I. BACKGROUND

For purposes of resolving the motion to intervene presently before the Court, the well-

pleaded allegations in the Complaint are assumed to be true.  *Secs. & Exch. Comm'n v.*

*Prudential Secs. Inc.*, 136 F.3d 153, 156 n.4 (D.C. Cir. 1998) (citing *Williams & Humbert Ltd. v.*

*W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988)).  Additionally, where

appropriate, the Court shall refer to the non-conclusory allegations and record evidence offered

by the Putative Intervenors in support of their motion to intervene.  *See Foster v. Gueory*, 655

F.2d 1319, 1324 (D.C. Cir. 1981) ("[M]otions to intervene are usually evaluated on the basis of

well pleaded matters in the motion, the complaint, and any responses of opponents to

intervention."); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001)

("Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the

proposed complaint or answer in intervention, and declarations supporting the motion as true

absent sham, frivolity or other objections.").  The Court recites the principal facts pertaining to

the issues raised in the pending motion, reserving further presentation of the facts for the

discussion of the individual issues below.

Potawatomi, a federally-recognized Indian Tribe, filed suit on January 21, 2015, seeking

---

[2] Pl.'s Complaint, ECF No. [1]; The Menominee's Motion for Leave to Intervene, ECF No. [22]; the Menominee's Memorandum in Support of their Motion ("Menominee's Mem."), ECF No. [22-1]; Plaintiff's Opposition to the Menominee's Motion for Leave to Intervene ("Pl.'s Opp'n), ECF No. [27]; and the Menominee's Reply in Support of their Motion ("Menominee's Reply"), ECF No. [31].

redress for the Federal Defendants' disapproval of an amendment to a gaming compact between

Potawatomi and the State of Wisconsin (the "2014 Compact Amendment").  Compl. ¶ 1.  The

2014 Compact Amendment includes a provision that would require the State to compensate

Potawatomi for lost revenue resulting from the Governor's concurrence in any tribe's application

to take certain lands into trust for gaming purposes, if such lands are within 30 to 50 miles from

Potawatomi's existing gaming facility in Milwaukee, Wisconsin.  *Id.* ¶ 16.  According to the

Complaint, this provision would create a "50-mile non-competition zone" around Potawatomi's

facility in Milwaukee.  *Id.* ¶ 16

Potawatomi alleges that the Federal Defendants erred by interpreting the 2014 Compact

Amendment as obligating Putative Intervenor Menominee Indian Tribe of Wisconsin—also a

federally recognized Indian tribe in Wisconsin that is eligible to conduct gaming under the

IGRA— to compensate Potawatomi for lost revenue resulting from a proposed Menominee

casino in Kenosha, Wisconsin, approximately thirty-three miles from a Potawatomi gaming

facility in Milwaukee.  *Id.* ¶¶ 4, 44.[3]  Potawatomi believes that in disapproving the 2014

---

[3]  At the time that the Complaint was filed on January 21, 2015, the Menominee were seeking
approval to operate a casino in Kenosha, Wisconsin, pursuant to an IGRA process, subject to (1)
a finding by the Secretary of the Interior that the proposal was in the best interest of the
Menominee and not detrimental to the surrounding community and (2) a concurrence in that
determination by the Governor of Wisconsin.  Compl. ¶ 18.  On August 23, 2013, the Secretary
of the Interior issued a finding that the Menominee's proposal was in the best interest of the
Menominee and not detrimental to the surrounding community.  *Id.* ¶ 48.  Shortly after the filing
of the lawsuit, on January 23, 2015, Wisconsin Governor Scott Walker issued a press release,
announcing that Governor Walker would not concur in the Secretary of the Interior's finding.
*See* Exhibit 14 to Menominee's Mot. for Leave to Intervene, ECF No. [22-16].  The press release
cited several factors, including the possible "cost of indemnifying [Potawatomi]." *Id.*  The
Menominee indicate that they will continue their efforts to obtain approval to open a casino in
Kenosha, pursuant to their rights under the IGRA and their rights under their gaming contract
with the State of Wisconsin, which authorizes the Menominee to conduct gaming in Kenosha,
subject to governmental approval.  *See* Menominee's Mem., ECF No. [22-1], at 5-6; *see also*
Exhibit 3 to Menominee's Mot. for Leave to Intervene, ECF No. [22-4], at 77-78 § XXXIX.

Compact Amendment, the Federal Defendants acted contrary to law, in an arbitrary and capricious manner and abused their discretion, if any, in violation of the IGRA and the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq. ("APA").  Plaintiff's Complaint seeks, *inter alia*, (1) an order holding unlawful and setting aside the Federal Defendants' disapproval of the 2014 Compact Amendment; (2) an order compelling the Federal Defendants to approve the 2014 Compact Amendment or to cause the 2014 Compact Amendment to take effect as "deemed approved" under the IGRA; (3) and an order that the Federal Defendant shall take those actions necessary for the 2014 Compact Amendment to take effect as a matter of federal law.  *See* Compl at 25-26.

On October 28, 2015, the Menominee Indian Tribe of Wisconsin and the Menominee Kenosha Gaming Authority—a tribal business chartered by the Menominee Indian Tribe of Wisconsin under tribal law for the purpose of conducting tribal gaming on lands to be acquired by the Tribe in Kenosha, Wisconsin—filed a Motion to Intervene in this action.  *See* Menominee's Mot. for Leave to Intervene, ECF No. [22], at 2.  The Menominee Indian Tribe of Wisconsin, the Menominee Kenosha Gaming Authority, and the State of Wisconsin are parties to the "Menominee Indian Tribe of Wisconsin and State of Wisconsin Gaming Compact of 1992," as amended (hereafter the "Menominee Gaming Compact").  *See id.* at 3.  The Menominee Gaming Compact authorizes the operation of tribal gaming in Kenosha, Wisconsin, pursuant to the IGRA and the Compact, subject to approval by the Department of the Interior and concurrence by the Governor of Wisconsin.  *See id.*  The Menominee Indian Tribe of Wisconsin and the Menominee Kenosha Gaming Authority, as Putative Intervenors, contend that if the 2014 Compact Amendment were to be approved or deemed approved, it would have a "direct and harmful impact on the rights and interests of [the Menominee] in conducting games in Kenosha,

Wisconsin" pursuant to the IGRA and the Menominee Gaming Compact.  Menominee's Mem.,

ECF No. [22-1], at 2.

Through their motion, the Putative Intervenors seek to intervene as defendants as a matter

of right pursuant to Federal Rule of Civil Procedure 24(a), or alternatively, by permissive

intervention pursuant to Federal Rule of Civil Procedure 24(b).  As discussed below, the Court

finds that the Putative Intervenors are entitled to intervene as a matter of right in this action

under Rule 24(a).  Because the Court concludes that the Putative Intervenors are entitled to

intervene as a matter of right, the Court finds it unnecessary to determine whether the Putative

Intervenors are also entitled to intervene by permissive intervention pursuant to Rule 24(b).  *See*

*Am. Horse Prot. Assoc., Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001) (concluding that

movant was entitled to intervene as of right and declining to reach question of permissive

intervention).

## II. LEGAL STANDARD

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as a matter of

right.  That provision provides, in relevant part, that "[o]n timely motion, the court must permit

anyone to intervene who . . . claims an interest relating to the property or transaction that is the

subject of the action, and is so situated that disposing of the action may as a practical matter

impair or impede the movant's ability to protect its interest, unless existing parties adequately

represent that interest." Fed. R. Civ. P. 24(a)(2).  Consistent with this language, the United

States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") has identified

four requirements for intervention as a matter of right:

(1) **Timeliness:**  First, an application to intervene in a pending action must be timely.
*Karsner v. Lothian,* 532 F.3d 876, 885 (D.C. Cir. 2008).  Whether a given application is
timely is a context-specific inquiry, and courts should take into account (a) the time
elapsed since the inception of the action, (b) the probability of prejudice to those already

party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights. *Id.* at 886.

(2) **Interest:**  Second, the putative intervenor must have a "legally protected" interest in the action. *Id.* at 885.  The test operates in large part as a "practical guide," with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process. *United States v. Morten,* 730 F.Supp.2d 11, 15-16 (D.D.C. 2010).

(3) **Impairment of Interest:** Third, the action must threaten to impair the putative intervenor's proffered interest in the action. *Karsner,* 532 F.3d at 885.  The inquiry is not a rigid one:  consistent with the Rule's reference to dispositions that may "as a practical matter" impair the putative intervenor's interest, Fed. R. Civ. P. 24(a)(2), courts look to the "practical consequences" of denying intervention, *Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 735 (D.C. Cir. 2003) (citing *Natural Res. Def. Council v. Costle,* 561 F.2d 904, 909 (D.C. Cir. 1977)).

(4) **Adequacy of Representation:**  Fourth, and finally, no existing party to the action may adequately represent the putative intervenor's interests. *Karsner,* 532 F.3d at 885. Significantly, the putative intervenor's burden here is *de minimis,* and extends only to showing that there is a possibility that its interests may not be adequately represented absent intervention. *Fund for Animals,* 322 F.3d at 735.

In addition to these four requirements, which emanate from the text of Rule 24(a) itself, a putative intervenor must further establish that it has standing under Article III of the Constitution. *Fund for Animals*, 322 F.3d at 728.   Where a party seeks to intervene as a defendant in order to uphold or defend an agency action, it must establish:  (a) that it would suffer a concrete injury-in-fact if the action were to be set aside, (b) that the injury would be fairly traceable to the setting aside of the agency action, and (c) that the alleged injury would be prevented if the agency action were to be upheld. *Am. Horse Prot. Assoc.,* 200 F.R.D. at 156; *see also Friends of Animals v. Kempthorne,* 452 F. Supp. 2d 64, 68 (D.D.C. 2006) (identifying requirements for constitutional standing in an action involving an agency action).[4]

---

[4]  In most instances, the standing inquiry will fold into the underlying inquiry under Rule 24(a):

### III. DISCUSSION

The Putative Intervenors contend that they have standing to intervene as defendants in this matter, and that they satisfy each of the four requirements for intervention a matter of right. *See* Menominee's Mem., ECF No. [22-1], at 14-21.

Plaintiff disputes the Putative Intervenors' contentions that they have standing to intervene and that they satisfy the requirements for intervention as a matter of right. *See* Pl.'s Opp'n, ECF No. [27], at 7-20.

The Court shall first address the parties' arguments as to whether the Putative Intervenors have standing to intervene. The Court shall then address whether the Putative Intervenors satisfy each of the four requirements for intervention as a matter of right.

A.   The Menominee have standing under Article III to intervene in this case.

In order "[t]o establish standing under Article III, a prospective intervenor—like any party—must show:  (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals*, 322 F.3d at 732-33 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Where, as here, a party seeks to intervene as a defendant to uphold an action taken by the government, the party must establish that it will be "injured in fact by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld." *Am. Horse*

---

generally speaking, when a putative intervenor has a "legally protected" interest under Rule 24(a), it will also meet constitutional standing requirements, and *vice versa*. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("[A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement."); *Fund for Animals*, 322 F.3d at 735 ("Our conclusion that the [putative intervenor] has constitutional standing is alone sufficient to establish that [it] has 'an interest relating to the property or transaction which is the subject of the action' ").

*Prot. Assoc.,* 200 F.R.D. at 156; *see also Military Toxics Project v. EPA*, 146 F.3d 948, 954

(D.C. Cir. 1998)  (holding that an association of chemical manufacturers had standing to

intervene as defendants in a case involving a challenge to an EPA regulation because intervenors

"would suffer concrete injury if the court grants the relief the petitioners seek").

Here, it is undisputed that the Menominee have attempted for years to develop a gaming

facility on land in Kenosha, *see* Compl. ¶¶ 18, 44, and that the Menominee will continue their

efforts in the future, *see* Menominee's Mem., ECF No. [31], at 6.  The Menominee would suffer

concrete injury if the Court grants the relief that Plaintiffs seek, namely, an order setting aside

the Federal Defendants' disapproval of the 2014 Compact Amendment and compelling the

Federal Defendants to approve the 2014 Compact Amendment or to cause the 2014 Compact

Amendment to take effect as "deemed approved" under the IGRA.  Specifically, setting aside the

Department of the Interior's disapproval of the 2014 Compact Amendment would injure the

Menominee by overturning a favorable administrative action sought by the Menominee and

which benefitted the Menominee.[5] *See Crossroads Grassroots Policy Strategies v. Fed. Election

Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015) ("Our cases have generally found a sufficient

injury in fact where a party benefits from agency action, the action is then challenged in court,

and an unfavorable decision would remove the party's benefits.").

Plaintiff contends that the Menominee would suffer no cognizable injury if the Court

grants Plaintiff's requested relief because a decision by this Court would not "enable Menominee

---

[5]  In fact, Plaintiff alleges in its Complaint that the Federal Defendants' disapproval of the 2014
Compact Amendment was premised on an interpretation of the 2014 Compact Amendment as
improperly "obligating the [Menominee] to compensate Potawatomi for lost revenue resulting
from a Menominee off-reservation casino in Kenosha, Wisconsin."  Compl. ¶ 4.  Plaintiff
contends that the Federal Defendants' interpretation of the 2014 Compact Amendment is
erroneous and violates the APA.  Plaintiff's contention concerns the underlying merits of its case
and shall not be addressed by the instant Memorandum Opinion.

to obtain gubernatorial concurrence" on an application to operate a casino in Kenosha.  Pl.'s

Opp'n, ECF No. [27], at 17.  Plaintiff argues that the Governor has an "absolute veto", meaning

that he is free to veto an application submitted by the Menominee "for any reason or for no

reason at all."  *Id.*

Plaintiff's argument misses the mark.  If the Court grants Plaintiff's requested relief and

compels the Federal Defendants to approve the 2014 Compact Amendment, then the State of

Wisconsin would be required, under the non-compete provision in the Amendment, to

compensate Potawatomi for any lost revenue resulting from the Governor's concurrence on an

application by the Menominee to operate a casino in Kenosha, because such a casino would fall

within the "50-mile non-competition zone" sought by Plaintiff.  *See* Compl. ¶ 16.[6]  The

requested relief, if granted, would, as a practical matter, impede the Menominee's efforts to

obtain a gubernatorial concurrence and would thereby impede their efforts to develop a gaming

facility in Kenosha.  *See* Exhibit 14 to Menominee's Mot. for Leave to Intervene, ECF No. [22-

16] (identifying "the cost of indemnifying [Potawatomi]" as one of the factors considered by

Governor Walker in his non-concurrence on the Menominee's most recent application).

Accordingly, a decision by this Court granting Plaintiff's requested relief would put the

Menominee at a "competitive disadvantage when seeking state approval for off-reservation

gaming." *Lac du Flambeau Band of Lake Superior Chippewa Indiana v. Norton*, 422 F.3d 490,

497 (7th Cir. 2005).  Such an alteration in competitive conditions "clearly amounts to a concrete

injury." *Id.* (citing *Clinton v. City of New York*, 524 U.S. 417, 433 (1998) (quoting Kenneth

---

[6] This Memorandum Opinion does not address the parties' contentions as to whether the 2014
Compact Agreement requires the Menominee to make mitigation payments to the State and/or to
Potawatomi.  That issue concerns the underlying merits of the case and shall not be addressed by
the instant Memorandum Opinion.

Davis & Richard Pierce, Administrative Law Treatise 13-14 (3d ed. 1994) ("The [Supreme] Court routinely recognizes probable economic injury resulting from [government actions] that alter competitive conditions as sufficient to satisfy the [Article III 'injury-in-fact' requirement].")).

Plaintiff further argues, in the alternative, that that "even if Menominee once had an interest in an ability to conduct off-reservation gaming in Kenosha, that interest no longer exists." Pl.'s Opp'n at 9. Plaintiff's argument is unavailing. The Menominee Gaming Compact specifically authorizes the development of a casino in Kenosha pursuant to the IGRA, subject only to approval by the Secretary of the Interior and concurrence by the Governor of Wisconsin. *See* Menominee's Mem. at 10; *see also* Exhibit 3 to Menominee's Mot. for Leave to Intervene, ECF No. [22-4], at 77-78 § XXXIX.

Having found that the Menominee would be so injured, the Court notes that the Menominee also satisfy the remaining two elements of Article III standing—causation and redressability.[7] Accordingly, the Court finds that the Menominee would be "injured in fact by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld." *Am. Horse Prot. Assoc.*, 200 F.R.D. at 156; *see also Military Toxics Project*, 146 F.3d at 954.

B. <u>The Menominee satisfy the requirements for intervention as a matter of right.</u>

Having found that the Menominee have standing to intervene, the Court must determine whether the Menominee satisfy the four requirements for intervention a matter of right, *i.e.*, (1)

---

[7] The parties' arguments as to whether the Menominee have standing center on whether the Menominee would be injured by the setting aside of the Federal Defendants' disapproval of the 2014 Compact Amendment.

their application to intervene is timely; (2) they have a "legally protected" interest in this action; (3) this action threatens to impair their interest, and (4) no existing party to this action adequately represents their interests. *See Fund for Animals,* 322 F.3d at 735-37.

### 1.   The Menominee's application to intervene is timely.

As to the first factor, Plaintiff concedes that the Menominee's application to intervene is timely. *See* Pl.'s Opp'n, ECF No. [27], at 3. The Menominee filed their motion to intervene before any of the Defendants had filed an answer. *See Fund for Animals*, 322 F.3d at 735 (motion to intervene filed before defendants filed answer was timely). This case is at an early stage, and the timing of the motion has not caused any prejudice to the existed parties—nor have the parties alleged any prejudice.

Accordingly, the Court finds that the Menominee's application to intervene is timely.

### 2.   The Menominee have a "legally protected" interest in this action.

As to the second factor, the Court finds that the Menominee have a legally protected interest in this action. As described above, the Menominee would sustain an "injury-in-fact" if the Court were to award the relief requested by Plaintiff. *See supra*, Part III.A.

Accordingly, for the same reasons as to why the Menominee have standing to intervene, the Court finds that the Menominee have a "legally protected" interest in this action. *See Fund For Animals,* 322 F.3d at 735 ("Our conclusion that the [putative intervenor] has constitutional standing is alone sufficient to establish that [it] has 'an interest relating to the property or transaction which is the subject of the action.' "); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) ("[The putative intervenor] need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes

of Rule 24(a).").[8]

### 3.   This action threatens to impair the Menominee's interest.

As to the third factor, the Court finds that this action threatens to impair the Menominee's

interest.  In determining whether an applicant's interests will be impaired, courts in this circuit

look to the "practical consequences" that the applicant may suffer if intervention is denied.

*Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977); *see also Reporters LLC*

*v. United States Dep't of Justice*, 307 F.R.D. 269, 278-79 (D.D.C. 2014); *Am. Horse Prot. Ass'n*,

200 F.R.D. at 158.

As discussed above, the challenged decision was favorable to the Menominee, and the

present action is a direct attack on that decision.   As such, the requested relief, if granted, would,

as a practical matter, impede the Menominee's efforts to obtain a gubernatorial concurrence and

would thereby impede their efforts to develop a gaming facility in Kenosha.  *See supra*, Part

III.B.  Accordingly, disposition of this action could seriously impair the ability of the

Menominee to protect their interests.  *See Fund for Animals*, 322 F.3d at 735.[9]

---

[8] Plaintiff appears to dispute the principle firmly grounded in D.C. Circuit case law that a
showing of Article III standing is sufficient to meet the "interest" requirement of Rule 24(a).  *See*
Pl.'s Opp'n, ECF No. [27], at 6.  However, Plaintiff cites no case law in support of its
contention.  Instead, Plaintiff merely states the precept that a "legally protected interest" must be
"of such a direct and immediate character that the intervenor will either gain or lose by the direct
legal operation and effect of the judgment." *Id.* (citing *Defs. of Wildlife v. Jackson*, 284 F.R.D.
1, 6 (D.D.C. 2012), *aff'd in part, appeal dismissed in part sub nom. Defs. of Wildlife v.
Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013).  The rule cited by Plaintiff is not antithetical to the
requirement in standing analysis that an intervenor incur an "injury in fact," defined as an
"invasion of a *legally protected interest* which is (a) concrete and particularized, and (b) actual or
imminent, not conjectural or hypothetical." *New York Reg'l Interconnect, Inc. v. F.E.R.C.*, 634
F.3d 581, 586 (D.C. Cir. 2011) (quoting *Lujan*, 504 U.S. at 560) (emphasis added).  In any event,
as described above, the Court concludes that the Putative Intervenors would "gain or lose by the
direct legal operation and effect of the judgment" in this case, and that they have a "legally
protected interest" sufficient to intervene in this action.  *See supra*, Part III.A.

[9] Plaintiff appears to put forward an argument that the Menominee would in fact be in a better
position to obtain gubernatorial concurrence if the 2014 Compact Amendment were to be

#### 4. The Federal Defendants do not adequately represent the Menominee's interests.

Fourth and finally, the Court finds that the Federal Defendants do not adequately represent the Menominee's interest in this action.  In assessing whether representation by existing parties is adequate, the Supreme Court has held that this requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Fund for Animals*, 322 F.3d at 735 (quoting *Trbovich*); *see also Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (burden is "not onerous").  Where, as here, one of the existing parties is a governmental entity, courts in this Circuit "have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund For Animals*, 322 F.3d at 736.

Here, Plaintiff contends that the Menominee's interests are adequately represented by the Federal Defendants because the movants advance "the same ultimate legal objective as the Federal Defendants; to wit, uphold the Secretary of the Interior's disapproval of the Potawatomi 2014 Compact Amendment."  Pl.'s Opp'n, ECF No. [27], at 19.  Plaintiff's argument is unavailing.  The non-binding, out-of-circuit cases cited by Plaintiff are entirely inapposite to this one, as they either do not involve a motion for intervention under Rule 24, *see Knox v. United States Dept. of the Interior*, 759 F. Supp. 2d 1223, 1236 (D. Idaho 2010),[10] or involve unusual

---

approved.  *See* Pl.'s Opp'n, ECF No. [27], at 15.  Plaintiff cites factors that it believes would influence the Menominee's ability to obtain a concurrence from the Wisconsin Governor. *See id.* at 15-17.  Plaintiff's argument is unavailing.  Even if there may be other impediments to the pursuit of a Kenosha casino by the Menominee, such factors do not undercut the Menominee's interest in an affirmance of the decision disapproving the 2014 Compact Amendment.
[10] *Knox* concerned whether certain tribes were necessary parties under Rule 19(a), which involves an entirely different standard.  Under Rule 24(a), to intervene as a matter of right, a putative intervenor "need not prove that representation by the Secretary *is* inadequate, but need

arguments, such as whether the existing defendant would actually defend the action, *see North Fork Rancheria v. State of California*, 1:15-cv-00419-AWI-SAB (E.D. Cal. Aug. 26, 2015) (Exhibit G to Plaintiff's Opposition, ECF No. [27]) ("Despite the [putative intervenor's] concerns that the State is putting forth a false defense—all the while secretly intending to fail . . . —there is no evidence before this Court that anything of the like is taking place.").

Furthermore, the Menominee are concerned with preserving their own rights and opportunities, including their specific economic development goals, both under the IGRA and in their capacities as sovereign entities. *See* Menominee's Mem., ECF No. [22-1], at 19. The federal government, however, represents the public interest of its citizens as a whole, and would be "shirking its duty were it to advance [a] narrower interest at the expense of its representation of the general public interest." *Fund For Animals*, 322 F.3d at 737 (quoting *Dimond*, 792 F.2d at 192-93). Accordingly, the Court finds that the Menominee have met the minimal burden of showing that their interests may not be adequately represented by the existing parties in this action. *See id.*

C.  Conditions upon Intervention

Even where the Court concludes that intervention as a matter of right is appropriate, its inquiry is not necessarily at an end: district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action. *Fund for Animals,* 322 F.3d at 737 n.11; *see also San Juan Cnty., Utah v. United States,* 503 F.3d 1163, 1189 (10th Cir. 2007) (en

---

show merely that it *may* be; and that the burden of making that showing should be treated as minimal." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972) (emphasis in original). By comparison, in *Knox*, the court notes that "[t]o prevail on a claim that the United States cannot adequately represent the [absent] Tribe's interest, the Secretary must not only identify the alleged [conflict of interest between the United States and the tribe] but demonstrate how such a conflict might actually arise under the facts of the case." *Knox*, 759 F. Supp. 2d at 1236.

banc) (practical considerations may "justify limitations on the scope of intervention [as of right]"); *Beauregard,* 107 F.3d at 352–53 ("[I]t is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right.").  Having concluded that the Menominee Indian Tribe of Wisconsin and the Menominee Kenosha Gaming Authority may each intervene in this action as defendants under Rule 24(a), the Court now considers what conditions, if any, to impose upon their participation.

The inquiry is necessarily context-specific, and the conditions should be tailored to fit the needs of the particular litigation, the parties, and the district court. In the past, courts have barred intervenors from injecting collateral issues into the litigation. *See, e.g., Brady Campaign to Prevent Gun Violence v. Salazar,* 612 F.Supp.2d 1, 11 n. 8 (D.D.C. 2009) (granting intervention of right but prohibiting intervenors from raising new claims or collateral issues); *Cnty. of San Miguel, Colorado v. MacDonald,* 244 F.R.D. 36, 48 n. 17 (D.D.C. 2007) (limiting intervention of right to claims within the scope of the complaint, but declining to impose other conditions). Other courts have required intervenors to consult with one another prior to filing papers with the Court and restricted their presentations to non-cumulative arguments. *See, e.g., Earthworks v. U.S. Dep't of Interior,* Civil Action 09-01972 (HHK), 2010 WL 3063143, at *2 (Aug. 3, 2010) (granting intervention as a matter of right but requiring consultation with federal defendants and restricting presentation to arguments not advanced by other parties).  In the end, the primary limitation on the district court's discretion is that any conditions imposed should be designed to ensure the fair, efficacious, and prompt resolution of the litigation.  *See United States v. S. Florida Water Mgmt. Dist.,* 922 F.2d 704, 710 (11th Cir.) (district court may condition intervention "on such terms as will be consistent with the fair, prompt conduct of this litigation."), *cert. denied,* 502 U.S. 953 (1991); *United States v. Duke Energy Corp.,* 171 F.

Supp. 2d 560, 565 (M.D.N.C. 2001) ("Applicants have an unconditional right to intervene, but this does not prevent the imposition of reasonable limitations on [their] participation to ensure the efficient adjudication of the litigation."). To achieve this salutary purpose, the district court should remain attuned to the two conflicting goals of intervention: *i.e.,* "to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending." *Smuck v. Hobson,* 408 F.2d 175, 179 (D.C. Cir. 1969).

In order to ensure the fair and efficacious resolution of this action, the Court shall require the Menominee Indian Tribe of Wisconsin and the Menominee Kenosha Gaming Authority, as intervening parties, to comply with the following conditions:

- The intervening parties shall meet and confer prior to the filing of any motion, responsive filing, or brief to determine whether their positions may be set forth in a consolidated fashion—separate filings by the intervening parties shall include a certificate of compliance with this requirement and briefly describe the need for separate filings;

- The intervening parties shall confine their arguments to the existing claims in this action and shall not interject new claims or stray into collateral issues;

- The intervening parties shall comply with each of the directives set forth in the [4] Order Establishing Procedures for Cases Assigned to Judge Colleen Kollar-Kotelly, issued on January 22, 2015; and

- In the event that a motion for summary judgment is filed in this action, the intervening parties shall file a joint statement of facts with references to the administrative record consistent with Local Rule LCvR 7(h)(2)—to the extent the intervening parties cannot agree on the inclusion of particular facts in their joint statement, they may identify such additional facts in bullet-point format in their respective memoranda of points and authorities.

The Court finds that the foregoing conditions strike the appropriate balance between ensuring the expedient resolution of this action while preserving a space for the intervening parties to articulate their respective positions and interests.

16

## IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT the Motion for Leave to Intervene,

filed by the Menominee Indian Tribe of Wisconsin and the Menominee Kenosha Gaming

Authority.  As intervening parties, the Menominee Indian Tribe of Wisconsin and the

Menominee Kenosha Gaming Authority shall comply with the conditions set forth in this

Memorandum Opinion.

An appropriate Order accompanies this Memorandum Opinion.


_____*/s/*_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE