# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FOREST COUNTY POTAWATOMI
COMMUNITY,

    *Plaintiff*,

    v.

UNITED STATES, *et al.*,

    *Defendants*,

MENOMINEE INDIAN TRIBE OF
WISCONSIN and MENOMINEE KENOSHA
GAMING AUTHORITY,

    *Defendant-Intervenors*.

Civil Action No. 15-105 (CKK)

## MEMORANDUM OPINION
(September 10, 2018)

    Plaintiff Forest County Potawatomi Community has brought this action under the

Administrative Procedure Act ("APA") against Defendants United States of America, United

States Department of the Interior, the Secretary of the Interior, and the Assistant Secretary of

Indian Affairs (collectively, the "Federal Defendants"), challenging the Assistant Secretary's

decision to disapprove a 2014 amendment to a gaming compact between Plaintiff and the State

of Wisconsin under the Indian Gaming Regulatory Act. 25 U.S.C. §§ 2701 *et. seq*, ("IGRA").

The Court has previously granted the Menominee Indian Tribe of Wisconsin ("Menominee") and

the Menominee Kenosha Gaming Authority's (collectively, the "Defendant-Intervenors") [22]

Motion for Leave to Intervene as Defendants.

    Now before the Court is Plaintiff's [79] Motion for Summary Judgment, Federal

Defendants' [81] Cross-Motion for Summary Judgment, and Defendant-Intervenors' [82] Cross-

Motion for Summary Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court will DENY the Plaintiff's motion, GRANT the Federal Defendants' motion, and GRANT the Defendant-Intervenors' motion.

The Court finds that the Assistant Secretary's disapproval of Plaintiff's 2014 compact amendment was not arbitrary or capricious. Evidence in the administrative record supports the Assistant Secretary's determination that the 2014 compact amendment was inconsistent with IGRA. Because there is evidence to support a finding that the amendment was inconsistent with IGRA, it was not arbitrary or capricious for the Assistant Secretary to disapprove the amendment.

## I. BACKGROUND

### A. Statutory and Regulatory Background

Congress passed IGRA in 1988 in order "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency,

---

[1] The Court's consideration has focused on the following documents:
- Pls.' Mot. for Summ. J. and Memo. of Points and Authorities in Support of Pls.' Mot. for Summ. J. ("Pls.' Mot."), ECF Nos. 79, 79-1;
- Fed. Defs.' Combined Response to Pls.' Mot. for Summ. J. and Cross-Mot. for Summ. J. ("Fed. Defs.' Res. and Cross-Mot."), ECF Nos. 81, 81-1;
- Def. Ints.' Statement of Points and Authorities in Opp'n to Pls.' Mot. for Summ. J. and in Support of Def. Ints.' Cross-Mot. for Summ. J. (Def. Ints.' Opp'n and Cross-Mot."), ECF Nos. 82, 82-1;
- Pls.' Consolidated Reply in Support of its Mot. for Summ. J. and Response in Opp'n to the Defs.' and Def. Ints.' Cross-Mots. for Summ. J. ("Pls.' Reply and Opp'n"), ECF No. 86;
- Fed. Defs.' Reply in Support of Cross-Mot. for Summ. J. ("Fed. Defs.' Reply"), ECF No. 91; and
- Def. Ints.' Reply in Opp'n to Pls.' Mot. for Summ. J. and in Support of Def. Ints.' Cross-Mot. for Summ. J. ("Def. Ints.' Reply"), ECF No. 92.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

and strong tribal governments." 25 U.S.C. § 2702(1). IGRA divides gaming into three classes. As is relevant here, Class III games are "all forms of gaming that are not class I gaming or class II gaming." *Id.* at § 2703(8). Class III gaming includes slot machines and "most casino games such as blackjack and roulette." *Amador Cty., Cal. v. Salazar*, 640 F.3d 373, 376 (D.C. Cir. 2011).

For an Indian tribe to engage in Class III gaming, the tribe must have a tribal-state gaming compact. *See* 25 U.S.C. § 2710(d)(1)(C). Gaming compacts may include provisions relating to a limited number of topics. *Id.* at § 2701(d)(3)(C)(i-vii). Gaming compacts may fall into one of six enumerated categories or may be on "any other subjects that are directly related to the operation of gaming activities." *Id.* at § 2701(d)(3)(C)(vii).

All Class III gaming compacts must be submitted to the Secretary of the Department of the Interior for approval. *See* 25 C.F.R. § 293.4. The Secretary has delegated authority to approve or disapprove of compacts to the Assistant Secretary of Indian Affairs.

Once a gaming compact is submitted for approval, the Assistant Secretary has three options. The Assistant Secretary may: (1) approve the compact, (2) disapprove the compact, or (3) take no action for 45 days, which results in the compact being deemed approved only to the extent it is consistent with IGRA. 25 U.S.C. § 2710(d)(8). The Assistant Secretary is permitted to disapprove a compact only if the compact violates IGRA, another federal law, or the United States' trust obligations to Indians. Id. at § 2710(d)(8)(B).

## B. Factual Background

Plaintiff is an Indian tribe occupying Southeastern Wisconsin. FCPCAR000005. Prior to the passage of IGRA, Plaintiff submitted an application to the United States to acquire in trust for the benefit of the tribe two parcels of land located in the city of Milwaukee, "Concordia

College Land" and "Menomonee Valley Land." *Id.* In its application, Plaintiff explained that it intended to operate a bingo hall on the Menomonee Valley Land. *Id.* Some of the profits from this bingo hall would fund the Milwaukee Indian School located on the Concordia College Land which served Indian children from various Wisconsin tribes. *Id.*

These lands were acquired in trust for Plaintiff in 1990 under the Indian Reorganization Act. And Plaintiff's application to conduct gaming on these lands was approved under IGRA. *Id.* In 1991, Plaintiff opened a bingo hall. FCPCAR000006. The closest Class III gaming facility was over 110 miles away from the bingo hall. *Id.*

In 1992, Plaintiff and the state entered into a gaming compact to regulate the conduct of Class III gaming. *Id.* The compact authorized 200 gaming devices at the bingo hall. The compact also required Plaintiff to pay its proportional share of the state's $350,000 in annual costs for regulating Indian gaming. *Id.*

In 1998, various amendments to the 1992 compact were required. *Id.* Plaintiff and the state submitted a new compact amendment to the Secretary of the Interior, and the amendment was approved. *Id.* The 1998 compact amendment permitted Plaintiff to operate 1,000 gaming devices and 25 blackjack tables if the city and county adopted regulations allowing expanded gaming. FCPCAR000007. Additionally, the amendment increased Plaintiff's annual payment to the state to $6,375,000 and extended the 1992 compact for five additional years, with an expiration date of 2004. *Id.*

Plaintiff and the state again amended the original 1992 compact in 2003. *Id.* In 2000, Plaintiff had opened a new, larger casino, and the 2003 compact amendment authorized Plaintiff to operate an unlimited number of gaming devices as well as additional casino games. *Id.* As part of the amendment, Plaintiff agreed to make lump-sum payments to the state totaling $90.5

million over two years to help alleviate the state budget crisis. *Id*. Plaintiff also agreed to make increased annual payments to the state based on a percentage of the Class III gaming net wins. *Id*.

In consideration for the lump-sum payments and the increased annual payments, Plaintiff and the state negotiated a 50-mile "no-fly zone" around Milwaukee. FCPCAR000008. Under the "no-fly zone" agreement, if the state permitted Class III gaming within 50-miles of Plaintiff's casino, then Plaintiff would be relieved of its obligation to make additional payments and the state would refund some of Plaintiff's past payments. *Id*.

Upon the submitting the 2003 compact amendment to the Secretary, the Secretary informed Plaintiff and the state that he would not approve the amendment if the "no-fly zone" provision was included. *Id*. The parties removed the "no-fly zone" provision and re-submitted the amendment to the Secretary. The parties agreed to negotiate a new provision at a later date which would similarly benefit Plaintiff. FCPCAR000009. Following the submission of the amendment with the "no-fly zone" provision removed, the Secretary took no action, so the amendment was deemed approved to the extent it was consistent with IGRA. *Id*.

For a year and a half, the parties attempted to negotiate a substitute provision for the "no-fly zone" and to resolve other ancillary issues. FCPCAR0000011. But, Plaintiff and the state were unable to reach a complete agreement. *Id*. In 2005, the parties agreed to again amend the 1992 compact. *Id*. The 2005 compact amendment established a 30-mile "no-fly zone" and required the parties to undertake last-best-offer arbitration addressing the rights and duties of the parties in the event that another tribe opened a Class III gaming facility within 30 to 50 miles of Plaintiff's casino. *Id*. The 2005 compact amendment was deemed approved by the Secretary to

the extent it was consistent with IGRA. FCPCAR000012. Plaintiff continued to make lump-sum payments and annual payments to the state in reliance on the compact amendment. *Id.*

While Plaintiff was renegotiating and amending its compact with the state, the Menominee tribe was attempting to develop an off-reservation casino for Class III gaming. In 2000, the Secretary approved Menominee's request to operate Class III gaming on an off-reservation land parcel in Kenosha, subject to the land being acquired in trust for gaming purposes. FCPCAR000685. The land parcel in Kenosha is located 33 miles away from Plaintiff's casino. FCPCAR001462. In 2004, Menominee filed an application asking the Secretary to take the Kenosha land into trust for gaming purposes. FCPCAR000685. In August 2013, the Assistant Secretary approved Menominee's application to take the Kenosha land into trust for gaming purposes. FCPCAR000014. Following the Assistant Secretary's determination, the Governor of Wisconsin had one year to concur. The Assistant Secretary granted the Governor a six-month extension, giving the Governor until February 19, 2015 to decide whether to concur. *Id.*[2]

Against this backdrop, in June 2014 the state invoked the arbitration agreement from the 2005 compact amendment with Plaintiff. The arbitration process was meant to establish compact terms pursuant to which Plaintiff would be compensated for lost revenue due to the opening of a new Class III gaming facility within 30 to 50 miles of its casino. *Id.* The arbitration panel selected the 2014 compact amendment as the best proposed compact amendment. *Id.*

The 2014 compact amendment set out the obligations of the state and Plaintiff in the event that the Assistant Secretary approved a Class III gaming facility between 30 and 50 miles away from Plaintiff's casino. FCPCAR000029. In that event, the compact requires an annual

---

[2] On January 23, 2015, the Governor decided not to concur with the Assistant Secretary's approval of Menominee's proposed Class III gaming facility.

Mitigation Payment to the Plaintiff equal to the annual revenue lost. *Id*. The annual revenue lost is to be calculated based on "Milwaukee Net Revenues" which include revenue from "Class III gaming, Class II gaming, food and beverage, [and] hotel and entertainment activity." FCPCAR000030.

While the state is ultimately "responsible for ensuring that the Mitigation Payments are paid in a timely manner and in full," the 2014 compact amendment "anticipate[s] that the State will enter into agreements under which the Applicant will agree to pay the Mitigation Payment." FCPCAR000031. The only named Applicant Facility is Menominee's proposed gaming facility. FCPCAR000029.

Alternatively, the amendment provides a payment plan whereby the Plaintiff "shall negotiate in good faith to reach an agreement on reasonable terms proposed by the State which would obligate the Applicant or other third party to make some or all of the Mitigation Payments." FCPC000032. The amendment suggests these payments could be made from the "Lock Box established in the Menominee Compact." *Id*.

On December 30, 2014, Plaintiff provided the Assistant Secretary with the 2014 compact amendment and detailed arguments for approving it. FCPCAR000001-25. But on January 9, 2015, the Assistant Secretary disapproved the 2014 compact amendment, finding it invalid under IGRA. FCPCAR001459-67.

In disapproving the amendment, the Assistant Secretary concluded that the amendment violated IGRA because it "includes provisions involving subjects that exceed the permissible scope of a Class III gaming compact." FCPCAR001464. The Assistant Secretary provided two primary reasons why the amendment exceeded the permissible scope of a Class III gaming compact. First, the Assistant Secretary determined that, rather than the state, "in fact, Menominee

would be responsible for making all of the Mitigation Payments." *Id*. Because Menominee would make the payments, the amendment "impose[d] upon another tribe the obligation to guarantee the [Plaintiff's] gaming and other profits." *Id*. Second, the calculation of the Mitigation Payments was based on revenue from not only Class III gaming, but also Class II gaming and ancillary businesses. FCPCAR001464-64 n.32.

On January 21, 2015, Plaintiff filed this lawsuit challenging the Assistant Secretary's disapproval of the 2014 compact amendment.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record . . . . Summary judgment is [ ] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts

defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). However, an agency is still required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (internal quotation omitted). "Moreover, an agency cannot 'fail[ ] to consider an important aspect of the problem' or 'offer[ ] an explanation for its decision that runs counter to the evidence' before it." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 57 (D.C. Cir. 2015) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

## III. DISCUSSION

After considering the arguments of all the parties and reviewing the administrative record, the Court concludes that the Assistant Secretary's disapproval of Plaintiff's 2014 compact amendment was not arbitrary or capricious. The Assistant Secretary determined that the amendment violated IGRA in two ways. First, the Assistant Secretary determined that the amendment violated IGRA by making one tribe liable for another's revenue losses. Second, the Assistant Secretary determined that the amendment violated IGRA by requiring mitigation payments for Class II gaming and ancillary businesses. Neither of these determinations were arbitrary or capricious.

### A. *Chevron* Deference

The Assistant Secretary determined that the 2014 compact amendment violated IGRA because the amendment concerned subjects impermissible under tribal-state compacts. Plaintiff contends that the subject of the compact was permissible because it fell under IGRA's tribal-state compact "catchall provision" which allows compacts concerning "any other subjects that are

directly related to the operation of gaming activities." 25 U.S.C. § 2701(d)(3)(C)(vii). As an initial matter, the Court concludes that the catchall provision is ambiguous and that the Assistant Secretary's interpretation, if reasonable, is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

When deciding whether to apply *Chevron* deference, initially, the Court must ask whether "Congress has directly spoken to the precise question at issue;" and if so, "the court as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842-43. However, if "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* As long as the agency's interpretation is "reasonable and consistent with the statute's purpose," the Court must defer to the agency's interpretation. *Chemical Mfrs. Ass'n v. EPA,* 217 F.3d 861, 866 (D.C. Cir.2000).

The Court finds that Congress has not spoken to what makes the subject of a tribal-state compact "directly related to the operation of gaming activities." 25 U.S.C. § 2701(d)(3)(C)(vii). Plaintiff and Federal Defendants argue that the provision is unambiguous. Plaintiff cites a Ninth Circuit case concluding that IGRA's catchall provision is unambiguous. *See In re Indian Gaming Related Cases*, 331 F.3d 1094, 1111 (9th Cir. 2003). This out-of-circuit opinion is not binding on the Court. Moreover, the Ninth Circuit summarily found the catchall provision unambiguous and did not explain its reasons for so finding. *Id.* ("we believe that the paragraph is not ambiguous"). Without explanation, the Court is not persuaded by this out-of-circuit opinion.

Instead, the Court agrees with Defendant Intervenors and finds the catchall provision to be ambiguous. Based on the text of IGRA, it is unclear how attenuated the relationship between the subject of the compact and the operation of gaming activities may be while remaining direct.

10

Additionally, it appears that the Assistant Secretary treated the catchall provision as though it was ambiguous. In reaching his decision, the Assistant Secretary construed the provision in light of the purposes of IGRA, used legislative history, and conducted a case-by-case approach. FCPCAR001463-67; *see Braintree Elec. Light Dep't v. FERC*, 667 F.3d 1284, 1288-89 (D.C. Cir. 2012) ("As long as the text is ambiguous and the agency [who made the decision under review] does not insist that it is clear, a reasonable interpretation will warrant our deference.").

Because the statute is ambiguous, the Court must next determine whether the agency's interpretation of the catchall provision is based on a permissible construction of the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984). But Plaintiff argues that the Court should not proceed to this next step. According to Plaintiff, even if the statute is ambiguous, *Chevron* deference does not apply for two reasons. First, Plaintiff contends that when a statute involving Indian Law is ambiguous, we must construe the statute liberally in favor of Indians, with ambiguous provisions interpreted to their benefit. *See Cobell v. Norton*, 240 F.3d 1081, 1101 (D.C. Cir. 2001). According to Plaintiff, the Indian law canon would require that we interpret the catchall provision broadly to allow more subjects for compacting. Second, Plaintiff argues that the Assistant Secretary's interpretation is not entitled to *Chevron* deference because it does not have precedential effect and is not binding on third parties. *See Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1136-37 (D.C. Cir. 2014). The Court is not persuaded by either of Plaintiff's arguments.

First, the Court concludes that the Indian law canon does not apply under these circumstances. The Indian law canon does not apply simply because the statute in question involves Indian law or Indian tribes. *See Stand Up for California! v. Dep't of Int.*, 879 F.3d 1177 (D.C. Cir. 2018) (deferring to an agency's interpretation of IGRA); *see also Confederated Tribes*

*of Grand Ronde Cmty. of Oregon v. Jewell*, 830 F.3d 552 (D.C. Cir. 2016) (applying *Chevron* deference to questions of Indian law). Instead, the Indian law canon developed from the general trust relationship between the United States government and Indian tribes and ensures that statutes passed for the benefit of Indian tribes are interpreted to their benefit. *See Bryan v. Itasca County*, 426 U.S. 373, 392 (1976).

Here, the general trust relationship between the United States government and Indian tribes is not implicated. Applying the Indian law canon would not benefit an Indian tribe vis-à-vis the federal government. Instead, as will be discussed further below, applying the Indian law canon as Plaintiff suggests would benefit Plaintiff at the expense of another tribe, Menominee. *See infra* III.B.1. The Court declines to apply the Indian law canon where the interests of all tribes are not aligned. *See Confederated Tribes of Grand Ronde Cmty. of Oregon v. Jewell*, 75 F. Supp. 3d 387, 396 (D.D.C. 2014) ("[T]he Indian canon of construction does not apply for the benefit of one tribe if its application would adversely affect the interests of another tribe"), *aff'd*, 830 F.3d 552 (D.C. Cir. 2016).

Moreover, applying the Indian law canon to broaden the permissible subjects for tribal-state compacts is not in the best interest of tribes generally. IGRA limits the subjects that are permissible in tribal-state gaming compacts. *See* 25 U.S.C. § 2710(d)(3)(C)(i-vii). In drafting IGRA, Congress balanced the states' interests in the regulation and conduct of Class III gaming against Indian tribes' interest in autonomy. A broad reading of the catchall provision would increase the scope of subjects that states can negotiate in a compact. Increasing the scope of subjects for compacting would allow states to increase their jurisdiction over Indian tribes, which is not in the best interest of tribes generally. *See GasPlus, L.L.C. v. Dep't of Int.*, 510 F. Supp. 2d

18, 34 (D.D.C. 2007) ("it is in the interest of Indian tribes to be free from bureaucratic oversight of their economic endeavors in all but a narrow category of circumstances").

Second, the Court disagrees with Plaintiff's argument that the Assistant Secretary's construction of IGRA should not receive *Chevron* deference because compact decisions do not have precedential effect and are not binding on third parties. Plaintiff cites *Fogo De Chao* as support for the proposition that *Chevron* deference should not apply to the Assistant Secretary's construction. 769 F.3d at 1136-37. But *Fogo De Chao* is distinguishable from the circumstances presented here. *Fogo De Chao* is part of a line of cases recognizing that non-precedential decisions of the Board of Immigration Appeals are not entitled to *Chevron* deference. The court's decision in *Fogo De Chao* relied on the specific nature of the regulatory scheme which involved informal adjudication and none of the "qualities that might justify *Chevron* deference in the absence of a formal adjudication or notice-and-comment rulemaking." *Id.* at 1137.

Here, the relevant question is whether "'it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and [whether] the agency interpretation claiming deference was promulgated in the exercise of that authority.'" *Gonzales v. Oregon*, 546 U.S. 243, 255-56 (2006) (quoting *U.S. v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)). Congress's delegation of authority can be shown by an agency's ability to engage in adjudication or notice-and-comment rulemaking, or by another indication of congressional intent. *Mead*, 533 U.S. at 228.

To determine whether *Chevron* deference is warranted, the D.C. Circuit applies the factors identified in *Barnhart v. Walton*, 535 U.S. 212, 222 (2002). *See Mylan Laboratories, Inc. v. Thompson*, 389 F.3d 1272, 1279-80 (D.C. Cir. 2004) (applying *Barnhart* factors to conclude that an agency's decision was entitled to *Chevron* deference). In *Barnhart*, the court concluded

that "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time all indicate[d] that *Chevron*" deference should apply. 535 U.S. at 222. The Court reaches the same conclusion here.

The Assistant Secretary's interpretation of IGRA's tribal-state compact provision is due deference because it is a key part of a comprehensive and detailed regulatory scheme. *See Citizens Exposing Truth about Casinos v. Kempthorne*, 492 F.3d 460, 466–67 (D.C. Cir. 2007) (applying *Chevron* deference to the Secretary's determination that certain lands constituted "initial reservation" under IGRA); *see also City of Duluth v. Nat'l Indian Gaming Comm'n*, 89 F. Supp. 3d 56, 64–65 (D.D.C. 2015) (applying *Chevron* deference to the National Indian Gaming Commission's interpretation of IGRA in a Notice of Violation), *dismissed*, No. 15-5162, 2016 WL 3615257 (D.C. Cir. July 1, 2016). In deciding whether to approve a compact, the Assistant Secretary engages in an informal adjudicatory process, considering the arguments of the parties, submissions of interested stakeholders, past decisions, and the intent of Congress. *See Mylan Laboratories*, 389 F.3d at 1280 (granting the FDA *Chevron* deference based on the complexity of the statutory scheme and the agency's reliance on previous determinations of similar issues and its own regulations). The Assistant Secretary's decision is open to the public and can be used to inform other interested parties about the accepted interpretation of IGRA's provisions. Additionally, the Assistant Secretary's compact decisions have the force of law because approval by the Assistant Secretary exempts gaming activities conducted pursuant to the compact from the operation of some federal laws. *See* 25 U.S.C. § 2710(d)(6) (prohibition on possession or sale of

gambling devices in Indian lands does not apply to gaming under compact); 18 U.S.C. § 1166(c)(2) (state gambling laws do not apply to gaming under compact).

In support of its argument that *Chevron* deference should not apply to the Assistant Secretary's construction of compact provisions under IGRA, Plaintiff relies on two out-of-circuit California district court decisions.

In *Chemehuevi Indian Tribe v. Brown*, 2017 WL 2971864 (C.D. Cal. Mar. 30, 3017), the court stated in dicta that "the Assistant Secretary of Indian Affairs' approval of gaming compacts … is not, by itself entitled to *Chevron* deference. Instead, it is the agency's authorization of implementing rules … that is entitled to considerable deference under *Chevron*." 2017 WL 2971864, *8 n.9. Similarly, in this case, the Court does not conclude that the Assistant Secretary's disapproval of the 2014 compact amendment is due *Chevron* deference. Instead, it is the Assistant Secretary's interpretation of IGRA's compacting catchall provision which is due *Chevron* deference. So, *Chemehuevi Indian Tribe* is not contrary to the Court's analysis.

And in *Fort Independence Indian Community v. California*, 679 F. Supp. 2d 1159 (E.D. Cal. 2009), an Indian tribe sued the state arguing that the state had violated IGRA by failing to conduct gaming compact negotiations in good faith. 679 F. Supp. 2d at 1162. The tribe argued that the state did not negotiate in good faith, in part, because the state requested revenue sharing agreements which were outside of the scope of subjects that may be included in gaming compacts. The court had to decide whether revenue sharing provisions directly relate to the operation of gaming. *Id*. at 1173. In so deciding, the court declined to give *Chevron* deference to the agency's interpretation of "directly relate." *Id*. at 1176. The court explained that the Assistant Secretary's approval of compacts results from a relatively informal process and "appear[s] not to have a precedential effect." *Id*. at 1177.

The case before the Court is readily distinguishable. Here, an Indian tribe is suing the Assistant Secretary for disapproving a compact. In disapproving the compact, the Assistant Secretary considered the parties arguments, arguments from other interested parties, past decision, and "did not reach this decision without a good deal of thought." FCPCAR001460. On the other hand, *Fort Independence Indian Community* involved the approval of a compact under what the court considered to be a relatively informal process. Additionally, in *Fort Independence Indian Community*, the court was not "aware of any explicit interpretation of [the catchall provision] as it specifically applies to revenue sharing." 679 F. Supp. 2d at 1162. Here, the Court has before it the Assistant Secretary's thorough interpretation of the catchall provision as it applies to exclusivity provisions.

Insofar as Plaintiff relies on *Fort Independence Indian Community* for the proposition that the Assistant Secretary's decision on compacts "appear[s] not to have a precedential effect that binds third parties," that issue was not briefed by the parties in *Fort Independence Indian Community*. *Id.* at 1177; *see PHH Corporation v. Consumer Financial Protection Bureau*, 881 F.3d 75, 195 (D.D.C. 2018) ("it is black-letter law that cases are not precedent for issues that were not raised"). Moreover, *Fort Independence Indian Community* was decided by an out-of-circuit district court. So, the Court is not bound by the statement, and for the reasons explained above, nor is the Court persuaded by the statement.

Considering the parties' arguments on both sides, the Court concludes that, if it is reasonable, the Assistant Secretary' interpretation of IGRA's catchall provision for tribal-state compacts is entitled to *Chevron* deference.

## B. Directly Related to the Operation of Gaming

The Assistant Secretary disapproved the 2014 compact amendment because it was contrary to IGRA for it was not directly related to the operation of gaming activities. He provided two primary reasons for why the amendment was not directly related to the operation of gaming activities. First, he found that the amendment "shift[ed] the burden of loss revenues from existing gaming operations to another tribe without the consent of the other tribe." FCPCAR001464. Second, he found that the amendment included mitigation payments for revenue from Class II gaming and other ancillary activities. Granting the Assistant Secretary's interpretation of the catchall provision *Chevron* deference, his determination that the 2014 compact amendment is not directly related to the operation of gaming activities is not arbitrary or capricious.

**1. Imposing Risk of Loss on Another Tribe**

It was not arbitrary or capricious for the Assistant Secretary to conclude that the 2014 compact amendment was contrary to IGRA because the compact called for "Mitigation Payments that guarantee[d] [Plaintiff's] profits by another tribe." FCPCAR001465.

As an initial matter, the Court grants *Chevron* deference to the Assistant Secretary's determination that the IGRA's catchall provision does not encompass a compact under which one tribe guarantees another's gaming revenue. This interpretation is reasonable and consistent with IGRA's purposes. *See Chemical Mfrs. Ass'n v. EPA,* 217 F.3d 861, 866 (D.C. Cir.2000) (explaining that a court must defer to an agency's interpretation if it is "reasonable and consistent with the statute's purpose").

The Assistant Secretary's interpretation is reasonable because a compact which imposes mitigation payments on another tribe does not fall within the plain language of the catchall provision. The catchall provision requires that the subject of compacts be "directly related" to the

"operation of gaming." 25 U.S.C. § 2710(d)(3)(C)(vii). This requirement ensures that states have an opportunity to engage with tribes as to legitimate regulatory concerns about the operation of gaming. *See Citizens Exposing Truth about Casinos v. Kempthorne*, 492 F.3d 460, 462 (D.C. Cir. 2007). An amendment which aims to protect one tribe's revenue at the expense of another tribe does not address the regulation or operation of gaming activities. So, it does not fall within the plain language of the catchall provision.

Moreover, such an amendment conflicts with the purposes of IGRA. Congress passed IGRA to ensure that the operation of gaming by Indian tribes would lead to economic development, self-sufficiency, and strong tribal governments. *See Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024, 2043 (2014); *see also* 25 U.S.C. § 2702(1). Interpreting the catchall provision to allow states to create significant barriers to entry for tribes attempting to open new gaming facilities would not further IGRA's goal of promoting tribal economic development. *See* FCPCAR001460 (explaining that the amendment would "impose a substantial financial burden on the Menominee community, which has among the highest unemployment rates, the highest poverty, and the lowest health indicators of any community in Wisconsin.").[3] Because a compact which forces one tribe's risk of lost revenue on another tribe without its consent is not in line with the purposes of IGRA, it was reasonable for the Assistant Secretary to interpret the catchall provision narrowly. *See Rincon Band of Luiseno Mission Indians of Rincon Reserve v. Schwarzenegger*, 602 F.3d 1019, 1034 (9th Cir. 2012) (explaining that the catchall provision is

---

[3] In its reply brief, Plaintiff briefly argues that the Assistant Secretary made conflicting statements on whether the mitigation payments would have a significant impact on Menominee. Pls.' Reply and Opp'n, 37, ECF No. 86. But the Assistant Secretary's statements that competition would have a modest impact on Plaintiff while mitigation payments would impose a significant burden on Menominee are not conflicting given that Menominee is one of the poorest tribes and would be a new market participant.

interpreted broadly when the compact is in line with the purposes of IGRA and narrowly when it is not).

Granting the Assistant Secretary's reasonable interpretation of the catchall provision *Chevron* deference, tribal-state compacts which make one tribe responsible for another's lost revenues are not directly related to gaming operations, so they are not permissible compacts. Furthermore, the Assistant Secretary's determination that the 2014 compact amendment was such a compact is not arbitrary or capricious. The Assistant Secretary considered the text of the amendment and supporting documents to conclude that, under the amendment, Menominee is responsible for making mitigation payments intended to insulate Plaintiff's revenues from increased competition.

Plaintiff argues that the Assistant Secretary's disapproval was arbitrary and capricious because the plain text of the amendment states that the "State is responsible for ensuring that the Mitigation Payments are paid in a timely manner and in full." FCPCAR000032. Despite this language, the Assistant Secretary found that "in fact … Menominee would be responsible for making all of the Mitigation Payments." FCPCAR001464. There is evidence in the administrative record that permitted the Assistant Secretary to conclude that Menominee would make the mitigation payments. *See Fuller v. Winter*, 538 F. Supp. 2d 179, 186 (D.D.C. 2008) ("Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record."). And determining how the amendment would be carried out in practice is the type of determination that agencies are best placed to make. *See Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 651 (1990) ("judgments about the way the real world works that have gone into the [agency's] policy are precisely the kind that agencies are better equipped to make than are courts."); *see also Rural Cellular Ass'n v. FCC*,

588 F.3d 1095, 1105 (D.C. Cir. 2009) ("When an agency's decision is primarily predictive …
[courts] require only that the agency acknowledge factual uncertainties and identify the
considerations it found persuasive.").

The plain text of the amendment supports the Assistant Secretary's determination that
the amendment would result in Menominee making the mitigation payments to Plaintiff. The
amendment "anticipate[s] that the State will enter into agreements under which the Applicant
will agree to pay the Mitigation payments." FCPCAR000032. The only named Applicant is
Menominee. FCPCAR000029. The amendment also sets forth a "State Alternative Mitigation
Payment Mechanism" under which Plaintiff "shall negotiate in good faith to reach an agreement
on reasonable terms proposed by the State which would obligate the Applicant or other third
party to make some or all of the Mitigation Payments." FCPCAR000032. The amendment
contemplates that these alternative mechanisms could include payments made from the "Lock
Box established in the Menominee Compact." *Id*. And again, Menominee is the only named
Applicant.

The supporting documents in the administrative record also buttress the Assistant
Secretary's determination that the amendment would result in Menominee making the mitigation
payments. The Assistant Secretary reviewed statements by Governor of Wisconsin Scott Walker
explaining that the State would only "compensate the [Plaintiff] for losses that are not covered
by the Menominee." FCPCAR001411. This statement indicates that the Governor believed
Menominee would make at least some of the mitigation payments.

Similarly, the Assistant Secretary considered a letter from members of Congress
supporting the amendment. According to the letter, the State and Plaintiff "anticipate entering
into agreements under which the Menominee will agree to make annual payments to [Plaintiff] to

mitigate lost revenue." FCPCAR001642. The members explained it was their "hope that, pursuant to this Amendment, any required Mitigation Payments will in fact be fully covered by the Menominee and that Wisconsin taxpayers will not be required to cover any of these costs." *Id*. Again, this letter supports the Assistant Secretary's determination that Menominee would in fact cover any mitigation payments required of the state.

The Assistant Secretary also credited submissions by Menominee contending that the tribe would be required to make mitigation payments to Plaintiff in order to get approval from the Governor to open a new gaming facility. The submission by Menominee notes that the amendment "assumes that the Menominee Tribe will pay for any [of Plaintiff's gaming] facility revenue losses allegedly caused by [Menominee's proposed] gaming facility." FCPCAR000389. And letters from representatives of Menominee to the Assistant Secretary contend that the amendment is designed to make it difficult for the Governor to approve Menominee's proposed gaming facility by tying his approval to Menominee's agreeing to make the mitigation payments. FCPCAR001160. Menominee's submissions further support the Assistant Secretary's finding that approval of the 2014 compact amendment would result in Menominee making the mitigation payments.

Finally, the Assistant Secretary's determination is supported by the context in which the amendment was submitted. Since at least 2000, Menominee had been attempting to develop a casino on land approximately 33 miles from Plaintiff's casino. FCPCAR000685 and FCPCAR001462. And in 2003, Plaintiff began trying to amend its tribal-state compact to protect itself from competition from other Indian casinos between 30 and 50 miles away. FCPCAR000008. Finally, in 2013, the Assistant Secretary approved Menominee's application to take the land into trust for gaming purposes. FCPCAR000014. Soon thereafter, Plaintiff and the

state began the arbitration process that resulting in the 2014 compact amendment. It is against the backdrop of Plaintiff's continued efforts to protect itself from competition that the 2014 compact amendment was submitted. *See* FCPCAR001459 ("In two of [Plaintiff's tribal-state compact] amendments, [Plaintiff] sought to protect themselves from the risk that another tribe would follow the same path as [Plaintiff] and develop an off-reservation casino within the same general area.").

As was previously established, the Court grants deference to the Assistant Secretary's determination that the catchall provision does not reach compacts which require one tribe to compensate another tribe for its revenue losses due to competition. And, the plain language of the amendment, the supporting documents, and the context of the amendment all provide support for the Assistant Secretary's conclusion that Menominee would make the mitigation payments to Plaintiff. Based on the evidence before the Assistant Secretary in the administrative record, the Assistant Secretary's disapproval on this ground was not arbitrary or capricious. *See United States Sugar Corporation v. Environmental Protection Agency*, 830 F.3d 579, 647 (D.C. Cir. 2016) (explaining that an agency's determination is arbitrary and capricious if its decision runs counter to the evidence before the agency).

## 2. Inclusion of Class II gaming and ancillary businesses

In addition to concluding that the 2014 compact amendment concerned an impermissible subject because Menominee would guarantee Plaintiff's profits, the Assistant Secretary also concluded that the amendment concerned an impermissible subject because it covered activities beyond Class III gaming, namely Class II gaming and ancillary businesses.  It was not arbitrary or capricious for the Assistant Secretary to conclude that the 2014 compact amendment was contrary to the IGRA because the compact requires that Plaintiff be compensated for lost revenue

from "Class II gaming, food and beverage, hotel, and entertainment activities, which fall outside the permissible subjects of negotiation under IGRA." FCPCAR1466.

As an initial matter, the Court grants *Chevron* deference to the Assistant Secretary's determination that IGRA's catchall provision does not encompass a compact which provides mitigation payments for revenue lost from Class II gaming and other ancillary businesses. *See Chemical Mfrs. Ass'n v. EPA,* 217 F.3d 861, 866 (D.C. Cir.2000) (explaining that a court must defer to an agency's decision if it is "reasonable and consistent with the statute's purpose"). It was reasonable for the Assistant Secretary to conclude that the catchall provision requires that compacts be directly related to the operation of Class III gaming. 25 U.S.C. § 2701(d)(3)(C)(vii).

Plaintiff argues that the inclusion of revenue from Class II gaming and ancillary businesses does not prevent a compact from being "directly related to the operation of gaming activities" under 25 U.S.C. § 2710(d)(3)(C)(vii). Plaintiff contends that the specific references to "Class III gaming activity" in other parts of IGRA indicate that Congress did not intend to restrict the catchall provision's unqualified reference to "gaming activity" to only Class III gaming. Moreover, Plaintiff contends that Class II gaming is often offered at the same facility as Class III gaming, so revenues from one type of gaming relate to the other.

But the Department of the Interior has consistently interpreted tribal-state compacts as encompassing only Class III gaming. FCPCAR001464 n.29 (quoting prior-Assistant Secretary Kevin Washburn as testifying before Congress that "Class II gaming is not an authorized subject of negotiation for Class III compacts"). This circuit has also treated § 2701(d) as dealing exclusively with Class III gaming. *See Colo. R. Indian Tribes v. Nat'l Gaming Comm'n*, 466 F.3d 134, 138 (D.C. Cir. 2006) (inserting "[Class III]" before "gaming activities" when quoting the catchall provision).

Given the regulatory background of Indian gaming, interpreting tribal-state compacts as regulating only Class III gaming is reasonable. A Senate committee report on IGRA explains that the bill "provides for a system of joint regulation by tribes and the Federal government of class II gaming on Indian lands and a system for compacts between tribes and States for regulation of class III gaming." S. REP. NO. 100–446, at 1 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071, 3071. The report goes onto explain that IGRA created a bifurcated regulatory system for Class II and Class III gaming because "there is no adequate Federal regulatory system in place for class III gaming, nor do tribes have such systems for the regulation of class III gaming currently in place." *Id*. Without regulatory systems in place for Class III gaming, IGRA anticipated that states and tribes would create compacts establishing the regulation and operation of Class III gaming. *Id*. Because a regulatory scheme was already in place for Class II gaming, tribal-state compacts were not required for the regulation of Class II gaming. Given this history, it was reasonable for the Assistant Secretary to interpret the catchall provision as meaning "directly related to the operation of [Class III] gaming."

Despite the reasonableness of the Assistant Secretary's interpretation, Plaintiff argues that the Court should not grant the interpretation deference. Plaintiff argues that the Assistant Secretary's narrow interpretation is not consistent with the goals of IGRA because the inclusion of Class II gaming in the 2014 compact amendment only benefitted Plaintiff by increasing the amount of revenue that Plaintiff would be compensated for.

This argument fails for two reasons. First, Plaintiff conflates what is in its own interest with what is in the interest of tribes generally. It would not be in the interest of Menominee, or other Applicant tribes, to be expected to compensate Plaintiff for losses from non-Class III gaming activities. Second, making Class II gaming and ancillary businesses a permissible subject

for compacting would allow states in future compacts to assert influence and regulatory control over non-Class III gaming activities. It is not in the interest of Indian tribes generally to increase the scope of the subjects over which states can regulate Indian tribes. *See GasPlus, L.L.C. v. Dep't of Int.*, 510 F. Supp. 2d 18, 34 (D.D.C. 2007) ("it is in the interest of Indian tribes to be free from bureaucratic oversight of their economic endeavors in all but a narrow category of circumstances").

Considering the arguments on both sides, the Court concludes that the Assistant Secretary's interpretation of the catchall provision is reasonable and entitled to *Chevron* deference. Therefore, tribal-state compacts which do not directly relate to the operation of Class III gaming are not permissible compacts. Furthermore, the Assistant Secretary's determination that the 2014 compact amendment did not directly relate to Class III gaming was not arbitrary or capricious.

If the Governor approved a gaming facility between 30 and 50 miles from Plaintiff's casino, the Amendment required mitigation payments based on the "Milwaukee Net Revenues." FCPCAR000030. These revenues were defined as "revenue from Class III gaming, Class II gaming, food and beverage, hotel and entertainment activity, earned at the Milwaukee Facility." *Id*. Based on the clear terms of the amendment, it was not arbitrary and capricious for the Assistant Secretary to disapprove the amendment because it covered Class II gaming and other ancillary activities not directly related to Class III gaming.

Plaintiff contends that, even if the amendment does concern Class II gaming and ancillary businesses, the amendment is still directly related to Class III gaming. Plaintiff cites *Flandreau Santee Sioux Tribe v. Gerlach*, 269 F. Supp. 3d 910 (D. S.D. Sept. 15, 2017), as support. In that case, the court allowed ancillary activities to be covered under a tribal-state compact. The court

found that, without the Class III gaming casino, the other amenities "would not exist in the sleepy but pleasant little town of Flandreau." *Flandreau*, 269 F. Supp. 3d at 926.

*Flandreau* is distinguishable from the case before the Court. The small town of Flandreau is different from the urban city of Milwaukee. And Plaintiff has not shown that the ancillary activities included in the amendment would not exist without Plaintiff's casino. Moreover, *Flandreau* was a suit to enjoin state taxation of ancillary activities. The case did not concern whether mitigation payments for Class II gaming and ancillary businesses are a permissible subject for compacting. Finally, as the case involved state taxation, the Department of the Interior was not a party and is in no way bound by the court's decision in *Flandreau*.

Moreover, the Assistant Secretary's disapproval is not necessarily contrary to *Flandreau*. The Assistant Secretary did not conclude that Class II gaming and ancillary activities could never be a permissible subject for compacting under the catchall provision. *See* FCPCAR001465 n.32 (explaining that even if ancillary businesses are located near gaming facilitates "[i]t does not necessarily follow" that the ancillary businesses are directly related to gaming activity). Instead, he more narrowly determined that the 2014 compact amendment regulated activity not directly related to Class III gaming. The Assistant Secretary noted that Plaintiff's "new, $97 million, 360 room hotel, restaurant and conference complex are located beyond the exterior boundaries of [Plaintiffs'] trust lands at the Milwaukee casino." Given the Plaintiff's particular situation, mitigation payments for Class II gaming and ancillary businesses were not directly related to the operation of Class III gaming.

As the Court previously established, the Assistant Secretary's interpretation of the catchall provision as requiring that compacts be directly related to the operation of Class III gaming is entitled to deference. And, the plain language of the amendment supports the Assistant

26

Secretary's determination that the amendment would require mitigation payments for revenue lost from Class II gaming and other ancillary businesses not directly related to Class III gaming. Based on the evidence before the Assistant Secretary in the administrative record, the Assistant Secretary's disapproval on this ground was not arbitrary or capricious. *See United States Sugar Corporation v. Environmental Protection Agency*, 830 F.3d 579, 647 (D.C. Cir. 2016) (explaining that an agency's determination is arbitrary and capricious if its decision runs counter to the evidence before the agency).

### 3. Benefit of the Bargain

Plaintiff argues that, in addition to being arbitrary and capricious, the Assistant Secretary's disapproval deprived Plaintiff of the benefit of its bargain with the state. As agreed in the 2003 and 2005 compact amendments, Plaintiff has paid the state $234.3 million in lump-sum payments and increased revenue-sharing payments. And Plaintiff continues to make these increased revenue-sharing payments each year. Pls.' Mot., 43, ECF Nos. 79-1. In exchange for these payments, the 2005 amendment provided that, if the state ended the tribe's exclusivity, Plaintiff would be compensated in the manner agreed upon in the last-best-offer arbitration process. Plaintiff argues that the disapproval of the 2014 amendment invalidated the primary economic benefit that Plaintiff had negotiated, exclusivity. This argument fails for two reasons.

First, Plaintiff has received benefits from its payments by being permitted to conduct gaming activities which are forbidden to non-Indians. Even after the "no fly zone" provision was withdrawn from the 2003 amendment Plaintiff "reassured [the Department of the Interior] that it will receive the benefit of its bargain." FCPCAR000325. Without a "no fly zone" provision preventing competition from other Indian tribes, this benefit was, at least partly, based on exclusivity vis-à-vis non-Indian gaming. Moreover, if the lump-sum payments and the increased

revenue-sharing payments were made solely in return for tribal gaming exclusivity, it is unclear why Plaintiff did not negotiate with the state for a reduction or a return of those payments in the event that the Assistant Secretary disapproved the result of the arbitration process, as he had disapproved Plaintiff's previous exclusivity provision. FCPCAR000008.

Second, even if we assume that the Assistant Secretary's disapproval would deny Plaintiff the benefit of its bargain, that fact is not relevant to the Assistant Secretary's analysis or to the Court's analysis. In considering whether to approve a compact, the Assistant Secretary considers only whether the compact violates IGRA, another federal law, or the United States' trust obligations to Indians. 25 U.S.C. § 2710(d)(8)(B). And in reviewing the Assistant Secretary's approval or disapproval, the Court considers whether the Assistant Secretary's decision was arbitrary or capricious. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (explaining that, under the APA, courts have a narrow scope of review of agency decisions). If the Assistant Secretary reasonably determines that a compact is contrary to IGRA, whether a party receives the benefit of its bargain with the state is simply not part of the analysis.

## C.  Distinguishing other Compact Decisions

In addition to questioning the reasoning behind the Assistant Secretary's disapproval, Plaintiff also criticizes the Assistant Secretary for failing to adequately distinguish past decisions either approving or deeming approved other compacts. Plaintiff argues that the Assistant Secretary's disapproval of the 2014 compact amendment was arbitrary and capricious because the Assistant Secretary provided no reasons for disapproving this amendment when other, similar compacts had been approved or deemed approved in the past.

When an agency declines to follow past decisions, the agency must explain the change in policy. *See Hall v. McLaughlin*, 864 F.2d 868, 873 (D.C. Cir. 1989). But where the past decisions are distinguishable, no great specificity of explanation is required. *Id.* ("where a particular agency action does not appear to be inconsistent with prior decisions, the agency's explanation need not be elaborate"). Here, the Court finds that the Assistant Secretary provided an adequate explanation distinguishing the disapproval of the 2014 compact amendment from the approval or deemed approval of other compacts.

The Assistant Secretary addressed compacts which were cited by Plaintiff and made reasonable factual distinctions between those compacts and the 2014 compact amendment. The Assistant Secretary made an overarching distinction between Plaintiff's amendment and all other approved or deemed approved compacts, explaining that "none of the examples involve a revenue guarantee for a tribe that is operating gaming on so-called 'off-reservation' lands acquired by the Secretary in trust under a two part determination" and "none of the compact provisions define revenue to include Class II gaming, food and beverage, hotel, and entertainment activities, which fall outside the permissible subjects of negotiation under the IGRA." FCPCAR001466. The Assistant Secretary also specifically distinguished some of the other approved or deemed approved compacts.

Plaintiff argues that five Wisconsin compacts which were previously approved or deemed approved by the Assistant Secretary are materially indistinguishable from the 2014 compact amendment. But, considering the five Wisconsin compacts, the Assistant Secretary explained that "compact amendments between other tribes and the State of Wisconsin do not specifically call for anything approaching the Mitigation Payments that guarantee the Tribe's profits by

another tribe. Nor do these other compact amendments include Class II gaming and other revenues." FCPCAR001465.

The Assistant Secretary's explanation distinguishing the 2014 compact amendment from other approved or deemed approved Wisconsin compacts was reasonable. Only one of the five Wisconsin compacts, the Lac Du Flambeau compact, was affirmatively approved. The Lac Du Flambeau compact is distinguishable from the 2014 compact amendment because, in the case of tribal gaming competition, it required the state to either indemnify the tribe for reductions in Class III gaming revenues or to arbitrate the event. BIA_003171. Importantly, the compact did not explicitly anticipate that the state would unload its payment obligation onto another tribe.

The remaining four Wisconsin compacts were only deemed approved to the extent that they are consistent was IGRA. 25 U.S.C. § 2710(d)(8). The Ho-Chunk Nation compact initially contained a provision which required the applicant tribe to indemnify Ho-Chunk Nation if the state approved a new casino which would result in a substantial reduction in Class III gaming revenue. BIA_003426-27. But this provision was removed while the compact was under consideration and replaced with a provision which instead required the state to indemnify the tribe through reductions in revenue-sharing payments if a newly approved gaming facility resulted in a substantial reduction of Class III gaming revenue. BIA_003429-31. Similarly, the Stockbridge-Munsee Tribe compact provided only that revenue-sharing payments would be reduced if the state approves another tribe's application for a Class III gaming facility that results in a reduction of the tribe's annual net win from Class III gaming operations. BIA_003625. And the last two deemed approved Wisconsin compacts, the Oneida Nation and St. Croix Chippewa compacts, provided that if the state enters a compact protecting any tribe from competition, the state will negotiate similar compact amendments with the Oneida and the St. Croix Chippewa

tribes. The remedy would be reductions in or return of revenue-sharing payments by the state. BIA_003569 (Oneida compact) and BIA_3596-97 (St. Croix Chippewa compact). Any amendments resulting from these negotiations would still need to be submitted for review for compliance with IGRA. FCPCAR001465. Accordingly, the Wisconsin compacts are distinguishable from the 2014 compact amendment.

Plaintiff also relies on the Michigan compacts to support its argument that the Assistant Secretary has previously allowed compacts which include inter-tribal revenue-sharing provisions. The Michigan compacts contain provisions stating that no tribe will submit an application for a new off-reservation gaming facility unless it has first entered into a revenue-sharing agreement with other tribes in the state. BIA_003265; BIA_003394. But, as the Assistant Secretary stated, the Michigan compacts are distinguishable because they "were based on a model agreement and all of the signatories consented to its provision."[4] FCPCAR001466. The letter approving the Michigan compacts emphasizes the importance of this difference, explaining that while tribal co-ownership of a gaming facility with sharing of revenue is permitted, "it is not clear one tribe can own such an establishment and distribute revenue to the other tribes." BIA_003251.

Plaintiff also relies on the deemed-approved Seneca Nation compact. In deeming this compact approved, the then-Assistant Secretary found that the compact's exclusivity provision was consistent with IGRA because the tribe received geographic exclusivity in exchange for

---

[4] Plaintiff briefly argues that Menominee was involved in the negotiations for the 2014 compact amendment. Pls.' Reply and Opp'n, 4, ECF No. 86. But the amendment was selected during a closed arbitration process. And the only record evidence that Plaintiff cites for this proposition is an "e-update" from Wisconsin Governor Scott Walker claiming that the state "has also conducted extensive discussions and negotiations with the impacted tribal governments to work toward a win-win-win scenario." FCPCAR001130. This statement does not demonstrate that Menominee was involved in the negotiations concerning who would make mitigation payments to Plaintiff.

revenue-sharing payments. BIA_003182-84. Plaintiff argues that this compact demonstrates that exclusivity provisions are permissible subjects for gaming compacts. But, in disapproving the 2014 compact amendment, the Assistant Secretary never claimed that exclusivity provisions are contrary to IGRA. FCPCAR001465-66. And he did not disapprove the 2014 compact amendment because it contained an exclusivity provision. Instead, he disapproved the amendment because it, unlike the Seneca Nation compact, "ma[de] another tribe the guarantor of [Plaintiffs'] profits." FCPCAR001466. The importance of this distinguishing factor is underscored by the then-Assistant Secretary's decision on the Seneca Nation compact explaining that "I still find a provision excluding other Indian gaming anathema to basic notions of fairness in competition and, if pushed to its extreme by future compacts, inconsistent with the goals of IGRA." BIA-003183. Here, it was reasonable for the Assistant Secretary to find that the 2014 compact amendment pushed its exclusivity provision to the extreme.[5]

The Assistant Secretary distinguished two other compacts relied on by Plaintiff. First, the Little Traverse Band of Odawa Indians compact relieved the tribe of its revenue-sharing payments in the case of competition rather than requiring mitigation payments from another tribe. FCPCAR001585-86. And the North Fork compact provided for a diversion of 2 percent of North Fork's revenue-sharing payments to another tribe. But this provision is not a profit guarantee and North Fork, the tribe required to make the payments, was a party to the agreement. FCPCAR001466. The 2014 compact amendment requires Menominee, a tribe which was not a

---

[5] The Seneca Nation compact is also distinguishable because in that case the affected tribes were traditionally regarded as adverse to gaming and did not have pending applications for gaming facilities. BIA_003183-84. Here, Menominee had a pending application for an off-reservation gaming facility. FCPCAR000014.

party to the agreement, to guarantee Plaintiff's profits from Class III gaming, Class II gaming, and ancillary businesses.

Plaintiff also cites the Oklahoma tribe compacts which contain an exclusivity provision requiring the state to pay liquidated damages based on gross revenue to the tribe if the state authorizes a nontribal entity to operate additional gaming machines within 45 miles of a tribe's casino. Pls.' Reply and Opp'n, 25, ECF No. 86. But these compacts were not before the Assistant Secretary and are not part of the administrative record, so they cannot be considered. *See Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (explaining that a reviewing court should not have more information before it than the agency did when making its decision). Moreover, even if the Court were to consider the Oklahoma compacts, they are readily distinguishable as they involve the protection of tribal gaming against non-tribal competition, so they do not implicate IGRA in the same way that a provision on inter-tribal competition does.

Finally, in arguing that the 2014 compact amendment was not beyond the pale of other compacts approved or deemed approved by the Assistant Secretary, Plaintiff points to comments from the Office of Indian Gaming Management proposing that the 2003 compact amendment contain a provision under which the Governor agrees not to concur in the development of an off-reservation casino within 50-miles of Plaintiff's existing casino unless the other tribe entered into a binding indemnification agreement with Plaintiff. But Plaintiff's reliance on this language is misplaced for two reasons. First, this language was "for discussion purposes only" and was "not cleared by the Acting Assistant Secretary." FCPCAR000157. Second, after these comments were made, Plaintiff and the state agreed to remove the exclusivity provision in the pending 2003 amendment at the insistence of the Assistant Secretary so that the remaining amendment would be approved. FCPCAR000291.

Considering the arguments of all parties, the Court finds that the Assistant Secretary reasonably distinguished his disapproval of the 2014 compact amendment from decisions on other compacts. Because he sufficiently distinguished his disapproval from past decisions, the Assistant Secretary's disapproval was not arbitrary or capricious. *See West Coast Media, Inc. v. FCC*, 695 F.2d 617, 621 (D.C. Cir. 1982) (upholding an agency's decision, despite conflicting precedent, where the agency acknowledged the precedent and recited factual differences between the cases).

## IV.  CONCLUSION

Based on the above analysis, the Federal Defendants and Defendant-Intervenors are entitled to summary judgment on all claims. Plaintiff is not entitled to its first claim for relief under the APA because the Assistant Secretary's disapproval of the 2014 compact amendment was not arbitrary or capricious. 5 U.S.C. § 706 (2)(a). Similarly, Plaintiff is not entitled to its third claim for relief under the Declaratory Judgment Act because the Assistant Secretary's disapproval was proper under the APA. 28 U.S.C. §§ 2201-02. Finally, Plaintiff is not entitled to its second claim for relief because the 2005 amendment did not create a "ministerial duty" to approve the 2014 amendment, for one compact cannot bind the Secretary to approve a later amendment. *See* 25 C.F.R. § 293.4 ("all compacts and amendments … must be submitted for review and approval by the Secretary under IGRA"). And Plaintiff does not contest Federal Defendants' or Defendant-Intervenors' motion for summary judgment on its second claim.

For the foregoing reasons, the Court DENYS Plaintiff's [79] Motion for Summary Judgment, GRANTS Federal Defendants' [81] Cross-Motion for Summary Judgement, and GRANTS Defendant-Intervenors' [82] Cross-Motion for Summary Judgment. An appropriate Order accompanies this Memorandum Opinion.

_____
       /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge